RUNNELS *v.* ALLIED ENGINEERS, INC.

1. WORKMEN'S COMPENSATION—FINDING OF DEPARTMENT—EVIDENCE.
   Finding of the department of labor and industry is binding upon the Supreme Court if there was any evidence to support it.

2. SAME—COMPENSATION—PHYSICAL CONDITION—EARNING CAPACITY.
   Compensation to an employee is based upon his incapacity for work, whether total or partial, and his physical condition may be considered only in its effect upon his ability to earn wages (2 Comp. Laws 1929, §§ 8425, 8426).

3. SAME—FURTHER COMPENSATION—CHANGE OF CONDITION.
   To entitle employee to award on petition for further compensation it must appear that since determination as to compensation was last had there has been such a change in his physical condition that his earning capacity has been lessened.

4. SAME—CARPENTER—TRAUMATIC ENCEPHALITIS—CHANGE OF CONDITION—EVIDENCE.
   In proceeding for further compensation by carpenter afflicted with traumatic encephalitis, evidence that he might suffer more pain and be less able to take care of himself *held*, not to entitle him to award where there is no change which would lessen his ability to earn wages.
   POTTER, C. J., and NORTH and BUSHNELL, JJ., dissenting.

Appeal from Department of Labor and Industry. Submitted October 11, 1934. (Docket No. 34, Calendar No. 37,859.) Decided January 7, 1935.

Charles V. Runnels presented his claim against Allied Engineers, Inc., now Consumers Power Company, employer, for injuries received while in defendant's employ. On petition for further compensation. Award to plaintiff. Defendant appeals. Reversed.

*S. K. Riblet,* for plaintiff.

*Arthur J. Paul,* for defendant.

Nelson Sharpe, J. The defendant here seeks review of an order made by the department of labor and industry on March 2, 1934, affirming an award of a deputy commissioner allowing plaintiff compensation for partial disability in the sum of $6 per week from the 27th day of July, 1933, until the further order of the commission, for an accidental injury suffered by him while in the employ of the defendant as a carpenter on or about September 24, 1929.

On October 20, 1930, the plaintiff filed a claim for compensation for this injury, describing it as "failing eyesight and hearing, numbness of body and limbs." A hearing was had thereon, resulting in an award on January 29, 1931, by a deputy commissioner "for permanent partial disability in accordance with a stipulation between the parties" in the sum of $1.43 a week for 455 weeks from and after August 5, 1930. On February 24, 1931, the plaintiff petitioned for authorization of a lump sum settlement for $650.65. The defendant consented thereto. The commission entered an order on March 10, 1931, authorizing the payment of $480.40 to plaintiff to pay the mortgage then due on his home; the remainder to be paid to him at the rate of $50 per month. A settlement receipt, dated July 7, 1931, was filed in the department, in which the plaintiff acknowledged the receipt of the $650.65 in settlement of compensation on account of the injury suffered by him on or about September 24, 1929, while in the employ of the defendant.

At this hearing the plaintiff testified in answer to a question put by his attorney, "What work are you able to do?"

"Well, I don't know of any work that I would be able to do, to go at and do a day's work, I could not do it, but I do a few chores around the home, and that is all, doing work a little while, like tinkering work a little while, that is all I can do, I can't do that any more, to any extent at all."

He also testified:

"My feet, the ends of my fingers, and my feet, the toes, and the end of my tongue had been numb from the time I was hit over the head, until the present day."

Dr. Geerlings, called by his counsel as a witness, testified that he had examined him and that his trouble was "traumatic neurosis;" that he was then unable to work except around the home, and that his condition was caused by the accident.

On October 1, 1931, plaintiff petitioned for further compensation. He stated therein that he had received the sum of $1.43 per week for 455 weeks, and that—

"Your petitioner further represents that since August 5, 1930, he has been disabled in the employment in which he was engaged at the time of the said injury and is entitled to further compensation.

"Your petitioner further represents that injuries caused by said accident have developed, and numbness has extended all over my body and I am unable to perform any manual labor. The hearing is greatly impaired and my eyesight so greatly impaired that I am unable to read to any extent. My feet and legs cramp when walking and any muscular action causes great pain."

A hearing was had thereon, and an award made on November 27, 1931, by a deputy commissioner for payment of $16.57 weekly from July 1, 1931, for total disability. On review by the department, the

award was vacated on January 14, 1932, for the reason that no change in condition since the settlement was entered into had been shown. No review thereof was had in this court.

At that hearing, the plaintiff in answer to a question as to the condition of his health since January 29, 1931, said:

"It has been the same as it has been since the time of the accident, steadily getting worse all the time. I cannot see any change from one day to the next but from one month to the next I am going down gradually and the numbness that was in my fingers and feet at the time of the accident has gradually spread over my whole body until I am numb over my whole body."

He also testified that he was not able to do any work on the farm or any carpenter work.

Dr. Geerlings was again called as a witness in his behalf. He testified that his trouble was "traumatic encephalitis," and that he was totally disabled from doing any farm work or carpenter work.

Plaintiff's son, Paul, was also called as a witness, and testified that his father was not then able to "do any work around the farm at all."

On October 21, 1932, the plaintiff filed another petition for further compensation. He stated therein:

"Your petitioner further represents that since August 5, 1930, he has been disabled in the employment in which he was engaged at the time of the said injury and is entitled to further compensation.

"Your petitioner further represents that while the above allowance was based on partial disability, your petitioner represents that he has in fact been totally and permanently disabled from performing all and every kind of work, since shortly after

August 5, 1930, and particularly since November 27, 1931, and such total and permanent disability has continued since that time and still continues; that said total and permanent disability resulted directly from the accidental personal injury suffered by your petitioner as aforesaid on September 24, 1929. That your petitioner's disability is such that he has no strength in his arms or hands; cannot bend over without being overcome with dizziness; and can walk about only with the greatest difficulty."

After the submission of proofs, the deputy commissioner, on January 31, 1933, found "that there is no change in plaintiff's condition," and dismissed the petition.

On July 27, 1933, the plaintiff filed another petition for further compensation. In it he alleged:

"Your petitioner further represents that since August 4, 1930, he has been disabled in the employment in which he was engaged at the time of the said injury and is entitled to further compensation.

"Your petitioner further represents that from the time of such injury, and particularly during the past few months, his condition has become steadily worse; that he has done no work of any kind during the last two years, being unable to do so as a result of his said injury; that he is not now able to wait upon himself, having to be helped in dressing, eating, and otherwise taking care of himself."

The deputy commissioner, after the submission of the evidence, made no finding as to a change in plaintiff's condition. He, however, awarded him compensation for partial disability at the rate of $6 per week from July 27, 1933, and, on review by the department, this award was affirmed.

In its opinion the department stated that the burden of proof was on plaintiff "to show that his condition has grown worse since the award entered on

January 31, 1933, denying compensation." The testimony was then reviewed, and the conclusion reached that it was sufficient to warrant a finding that plaintiff's condition had changed for the worse since the last hearing and that the award should be affirmed.

The finding of the department is binding upon this court if there was any evidence to support it. Compensation to an employee is based upon his "incapacity for work," whether total or partial, 2 Comp. Laws 1929, §§ 8425, 8426, and his physical condition may be considered only in its effect upon his ability to earn wages. To entitle the plaintiff to compensation under the petition last filed by him, it must appear from the evidence submitted that there had been such a change in his physical condition, after the award entered on January 31, 1933, as had lessened his earning ability.

At the hearing on which this award (January 31, 1933) was based, the plaintiff again testified as to his injury. He further testified:

"Q. Have you been able to do any manual labor of any kind?

"A. I have never done any manual labor since I was hurt. I have never taken my place among a crew of men since I was injured.

"Q. Have you done any work at all that would require any strength or muscular control?

"A. I did some work, just a little light tinkering jobs for a little better than a year after I was injured. No heavy work, just light tinkering jobs.

"Q. Since November 10, 1931, have you been able to do any work of any kind?

"A. No.

"Q. Have you tried to?

"A. Yes, I have tried to but that is all there is to it. I can only try, I cannot do it. * * *

"*Q.* Can you do light work?

"*A.* No, I cannot do anything more. I cannot hold anything in my hands. I cannot hold an ax in my hands. I cannot even hold a cane in my hands and walk with it in my hands any more."

Several other witnesses testified that he was unable to do any work. Dr. Geerlings was again called as a witness in plaintiff's behalf. He testified that he had on frequent occasions examined the plaintiff; that his trouble was "traumatic encephalitis," which he stated was an inflammation of the brain which was caused by his injury; that he was unable to earn anything, and that there was not "much of a change" since the hearing on November 10, 1931.

At the hearing which resulted in the award appealed from, the following evidence was submitted. Dr. Geerlings was the first witness sworn. He testified that he had examined the plaintiff a considerable number of times, the last on September 8, 1933. He was then asked, "Have you diagnosed his condition the same in each examination?" and answered, "I have." He stated that it was "traumatic hysteria." He was then asked by the deputy commissioner, "What were your findings at that time with reference to his physical condition?" and answered:

"My findings were a little different than what they were the first time. His vision and hearing he claims were better. He still had a little rigidity of the neck and did not complain of any respiratory or cardiac difficulties. His chief complaint on my last examination was numbness and tingling of the extremities and areas of anesthesia in both extremities and complained of difficulty in walking. His rectal reflexes, which were not normal a year ago, were normal at this last examination."

He was then asked and answered as follows:

"*Q.* Would you say this man is able to do work, to do manual labor?

"*A.* I think he is able to do some labor.

"*Q.* What do you mean by some labor?

"*A.* Some light work I think would be better for him.

"*Q.* You advised him to do that?

"*A.* Yes.

"*Q.* And you advised him to walk as much as he could?

"*A.* Yes, I did.

"*Q.* You mean you told him to do as much as he can. In other words, that it would be good for him?

"*A.* Yes, sir."

The plaintiff was then called as a witness. After stating that his present condition was a continued result of the original accident, he testified:

"*Q.* What work have you done on your farm?

"*A.* Nothing that you can call labor. I carry an empty water pail from the house out to the well and put the empty water pail on the pump and stand there and watch the pails and then tell someone from the house when they are filled and they would come and carry them in for me.

"*Q.* Have you attempted to do any of the farm work?

"*A.* No, because I could not do anything. * * *

"*Q.* Do you have pain at all times?

"*A.* Yes, pain at all times.

"*Q.* What does it feel like?

"*A.* Sort of a demoralizing pain, a heavy demoralizing pain. * * *

"*Q.* Have you had any periods when you were absolutely unable to walk?

"*A.* I have periods that I cannot move at all, just go into a stupor, when this pain draws up into my neck and then into my head and into my eyes

and I go into a sort of stupor and do not realize any-
thing. I do not realize any pain in my body, only
just in my head."

He then stated that he had attended the meetings
of the township board as a justice of the peace, his
term expiring in July, 1933; that he had acted as a
member of the election board in the spring of that
year, and that he had been a director of the school
district for about 10 years.

Mrs. Runnels, the wife of the plaintiff, testified
that he had done no work on the farm during the
year 1933.

"*Q.* What would you say as to his condition last
year compared to now?

"*A.* He is not so well.

"*Q.* Does he require more assistance than he did
last year?

"*A.* In some ways, we do have to help him more.

"*Q.* In what ways?

"*A.* Last year, part of the time, he could take
off his coat with his right hand and he cannot do
that now."

Frank Runnels, a son of the plaintiff, testified
that he took the school census for his father, and
that his father did not wait on himself as much as
he did the year before. A number of plaintiff's
neighbors were then called and testified as to his
physical condition.

The defense called three doctors, all of whom tes-
tified that there was no appreciable change in the
physical condition of the plaintiff from what they
had observed prior to the former hearing.

A comparison of the testimony submitted at this
hearing with that submitted at the former hearing
fails to disclose any change in plaintiff's ability to
earn wages. The use of the word "worse" in the

opinion of the department was an unfortunate expression. He may now suffer more pain and be less able to take care of himself, but there was no change in his condition which would entitle him to compensation under the act.

The facts presented are quite similar to those in *Levanen* v. *Seneca Copper Corp.*, 227 Mich. 592. It was there said (p. 601):

"It was plaintiff's contention and testimony in all three of his petitions and hearings upon them, that he was totally incapacitated by his injury from work at the employment in which he was engaged when the accident occurred. His first and second petitions allege 'that he is totally incapacitated in the future as to his former employment,' and the third that he is not only 'totally incapacitated from doing the work he was formerly employed at as an expert miner, * * * but that he is totally disabled from doing work of any character that requires the use of said leg.' The test of an injured employee's right to compensation is his inability by reason of the accident to work and earn wages in the employment at which he was engaged when injured. If he was totally incapacitated when he filed his first petition, his condition in that respect could not change for the worse. Upon that proposition the third petition was but a rehearing of his former petitions."

See, also, *McKay* v. *Jackson & Tindle, Inc.*, 268 Mich. 452.

The order affirming the award of the deputy commissioner is reversed and set aside.

Fead, Wiest, Butzel, and Edward M. Sharpe, JJ., concurred with Nelson Sharpe, J.

Potter, C. J. (*dissenting*). I am not in accord with the conclusion herein reached by Mr. Justice Nelson Sharpe, the error in whose reasoning, in

my opinion, is in confusing plaintiff's application with the department's determination,—a pleading with its order,—a statement of plaintiff's claim with a determination by the department.

Where the department on each occasion has held plaintiff was not wholly disabled, there is no former adjudication he was wholly disabled, and he is not estopped from pressing a claim of total disability by an adjudication that prior thereto he had been partially disabled, even though at the time the department found he was only partially disabled he may have claimed to have been wholly disabled. Plaintiff's right to recover cannot be affected by what he claimed as to the extent of his injury, but is affected only by the determination of the department. The effect of the holding of Mr. Justice NELSON SHARPE is to make plaintiff's prior claim of total disability equivalent to a prior award of total disability in everything except payment,—the only thing in which plaintiff or the public is interested. If a prior award of total disability had been made and compensation paid therefor, this case would not be here. Nothing but payment in accordance with the statute prescribing the amount thereof in accordance with the facts as found by the department satisfies the statute, the purpose of which should not be thwarted by common-law reasoning when the major purpose of the statute was to abrogate the common law.

I think the award of the department of labor and industry should be affirmed.

NORTH, J. (*dissenting*). I am for affirmance; but I think the statement of the law contained in Mr. Justice POTTER's opinion in this case is too broad. Following plaintiff's injury he had an award of compensation for partial disability. This award

was paid in full by a lump sum settlement. Thereafter he filed two petitions for further compensation on the alleged ground of total disability. Incident to each of such petitions the department of labor and industry had before it for determination the question of whether plaintiff was then entitled to compensation either because of total disability or because of partial disability greater than that for which he had already received compensation. In the·final determination of each of these two former petitions the department held he was not then entitled to further compensation. Necessarily this was an adjudication that plaintiff was not *then* totally disabled or partially disabled to a greater degree than when the first award was made. That such determinations are *res judicata* has been held in numerous decisions of this court.

But plaintiff in his petition made still later and now before the court was entitled to a hearing as to whether his condition was such that he was then totally disabled or in a greater degree partially disabled and whether such disability had existed during all the period since his last preceding hearing or during any portion thereof. It is for this period that plaintiff in this present proceeding was awarded compensation for partial disability. There is testimony to sustain the award. The compensation was ordered to begin July 27, 1933, which is the date when his present petition was filed and subsequent to the denial of his last preceding petition. This award should be affirmed.

BUSHNELL, J., concurred with NORTH, J.