HAYWARD *v.* KALAMAZOO STOVE CO.

1. Workmen's Compensation—Approval of Final Settlement Receipt—Testimony on Subsequent Petition for Review of Payments.

   Approval by department of labor and industry of final settlement receipt which stated employee had fully recovered constituted an adjudication that at that time the employee had fully recovered from his injuries and was controlling over plaintiff's testimony at hearing on his subsequent petition for review of payments (2 Comp. Laws 1929, § 8453).

2. Same—Change of Physical Condition—Total Disability.

   Adjudication by department of labor and industry on petition for review of payments that employee was then totally disabled, supported by testimony, constituted an adjudication of such a change of physical condition as is contemplated by statute to justify award of compensation for total disability where department had previously approved a final settlement receipt stating employee had fully recovered from the accidental injuries (2 Comp. Laws 1929, § 8453).

   Wiest, Bushnell, and Chandler, JJ., dissenting.

ON REHEARING.

3. Same—Approval of Final Settlement Receipt—Change of Physical Condition—Further Compensation.

   Award to plaintiff on petition for further compensation because of disability found to exist is affirmed notwithstanding plaintiff claimed total disability at time final settlement receipt was signed and approved, was re-employed at lighter work for a while, and now claims that his condition had not changed for the worse; the approval of the receipt being tantamount to finding of recovery from the injury and controlling over the claims then presented.

   Wiest and Chandler, JJ., dissenting.

Appeal from Department of Labor and Industry. Submitted January 4, 1939. (Docket No. 32, Calendar No. 40,302.) Decided April 4, 1939. Submitted on rehearing October 3, 1939. Decided November 9, 1939.

Charles Hayward and Kalamazoo Stove Company, employer, and American Mutual Liability Insurance Company, insurer, entered into an agreement for compensation. Final settlement receipt was filed and approved and compensation stopped. Petition for review of payments. Award to plaintiff. Defendants appeal. Affirmed.

*Frank F. Ford* and *Edward J. Ryan,* for plaintiff.

*Kelley, Sessions, Warner & Eger,* for defendants.

*George J. Cooper* and *L. J. Carey,* for Michigan Mutual Liability Company; *Joseph Zwerdling,* for Michigan Federation of Labor; *Maurice Sugar* (*Joseph Zwerdling,* of counsel), for Michigan State Industrial Council; *Benjamin Marcus,* for National Lawyers Guild; *Shields, Ballard, Jennings & Taber,* and *Alexander, McCaslin & Cholette, amici curiae,* on rehearing.

POTTER, J.   Plaintiff, employed by defendant Kalamazoo Stove Company, on August 6, 1936, suffered an injury arising out of and in the course of his employment. By agreement, compensation was paid plaintiff for total disability to December 15, 1936, when he went back to work at light work, and December 18, 1936, signed a final settlement receipt in which it was stated he had fully recovered. This final settlement receipt was presented to and approved by the department of labor and industry, and compensation stopped. November 23, 1937, plaintiff filed a

petition pursuant to 2 Comp. Laws 1929, § 8453 (Stat. Ann. § 17.188), providing for review of weekly payments at the request of the employee, asking for an award of compensation based on total disability. The department took testimony and found plaintiff was totally disabled and awarded him compensation at the rate of $6.40 a week during the period of partial disability from December 15, 1936, to June 15, 1937, and compensation at the rate of 80 cents a week during the period of partial disability from June 15, 1937, to November 13, 1937, and compensation at the rate of $18 a week during the period of total disability from November 13, 1937, and continuing until further order of the department. Defendants bring certiorari to review the order of the department of labor and industry.

Defendants contend the department had no jurisdiction to make the order complained of; that it may not reopen the award based upon approval of the final settlement receipt signed by plaintiff for the reason that he has not shown any change in condition; that the doctrine of *res judicata* applies to the award of the department. Appellee contends the approval of the final settlement receipt was an adjudication that on December 18, 1936, plaintiff had fully recovered; that plaintiff is not estopped from showing he was totally disabled at the time of his application for review of payments, and not estopped from showing what his real condition was at the time of the signing of the final settlement receipt; that plaintiff has sustained the burden of proof showing a change of condition; and that the final settlement receipt was signed, not because his physical condition had improved, but in an attempt at rehabilitation, and that it was not necessary for him to show a change in physical condition for the worse since the execution of the final settlement receipt in order to recover compensation.

There is no doubt the department of labor and industry at the time it approved the final settlement receipt, if it adjudicated anything, adjudicated that at that time plaintiff had fully recovered from his injuries. Otherwise, it had no right to stop compensation. It is the adjudication of the department, and not plaintiff's testimony, which controls. Plaintiff claimed at the time he filed the petition to review payments he was totally disabled. Testimony was taken before the department of labor and industry and it so adjudicated. This is an adjudication of such a change of physical condition as is contemplated by the statute and fully sustains the award of the department.

The real fact is that plaintiff, at the time he filed the settlement receipt, had not fully recovered from disability on account of his injury. He went back to work at different and lighter work than that at which he had been employed in an attempt to rehabilitate himself—to be self-supporting. He was paid approximately $21.60 a week instead of $31.20 a week.

Settlement receipts have been frequently before the court in cases where similar questions were involved. *Hood* v. *Wyandotte Oil & Fat Co.*, 272 Mich. 190; *MacDonald* v. *Great Lakes Steel Corp.*, 274 Mich. 701; *Smith* v. *Pontiac Motor Car Co.*, 277 Mich. 652; *Markey* v. *S. S. Peter & Paul's Parish*, 281 Mich. 292; *DeTroyer* v. *Ernst Kern Co.*, 282 Mich. 689.

Under the rule of these cases, the award of the department was warranted, and is affirmed, with costs.

BUTZEL, C. J., and SHARPE, NORTH, and McALLISTER, JJ., concurred with POTTER, J.

WIEST, J. (*dissenting*). I do not concur in the opinion of Mr. Justice POTTER.

The award should be vacated.

Plaintiff was injured August 6, 1936. An award was by approved agreement. Final settlement receipt was approved December 29, 1936. In that receipt plaintiff stated:

"I have fully recovered from all disability on account of this accident. I returned to work on the 16th day of December, 1936, at a wage of $31.20 per week and I understand that all compensation is now stopped and that I will have to show a change for the worse that has lessened my earning capacity before I will be entitled to further compensation."

Plaintiff then stated the law on the subject.

November 23, 1937, plaintiff filed a petition for further compensation, alleging total disability to perform common labor ever since the date of the injury. Upon hearing, the deputy commissioner denied compensation. At the hearing plaintiff testified:

"Q. You also say in your petition for further compensation that you were totally disabled and had been totally disabled as a common laborer since August 6, 1936; is that your present claim?

"A. That is my present claim.

"Q. And you claim you were totally disabled as a common laborer, although you worked at the plant from December 15, 1936, to November 13, 1937?

"A. In light work.

"Q. If I understand your testimony you gave on direct examination, it is that your condition so far as the accident is concerned is the same now as it always has been since the accident?

"A. Since the accident.

"Q. And that there has never been any change in your condition since the accident occurred?

"A. Well, it isn't as severe, but, as I say, you know, it is just practically the same as it was. * * *

"Q. So there isn't anything different about it now than there was in December, say, December 15, 1936; it is the same now?

"A. The same thing all the way through."

Upon review of the holding of the deputy, the department, unable to find a change for the worse from the time of the injury, still allowed compensation.

The case is ruled in all particulars by the unanimous opinion of this court, written by Justice BUSH-NELL, in *Butler* v. *Millman*, 271 Mich. 113, where we held that approved settlement receipts have the force of an award, and the language of rule 29 of the department is without force because it cannot change the statute:      .

"The rule cannot change the statute, 2 Comp. Laws 1929, § 8444 (Stat. Ann. § 17.178). The approved settlement receipt is final and binding upon the parties thereto, and in the absence of a change for the worse in his condition, the order of the department must be reversed."

The cases cited by my brother have no applicability to the instant case.

BUSHNELL, and CHANDLER, JJ., concurred with WIEST, J.

ON REHEARING.

POTTER, J. The facts appear in the opinion filed April 4, 1939. Rehearing was granted.

This proceeding is under the workmen's compensation act.* Its disposition depends upon the application of statutory rules to the facts.

At common law, an employer was not liable to an employee for injuries suffered by the employee arising out of and in the course of his employment if such employer was without fault. To recover in a suit for damages, it was necessary for the employee to show that the employer was negligent; that such negligence was the proximate cause of the injury complained of; and his own freedom from contribu-

_____

* See 2 Comp. Laws 1929, § 8407 *et seq.* (Stat. Ann. § 17.141 *et seq.*).—REPORTER.

tory negligence. It was a defense to the imposition of liability upon the employer if the proof showed the contributory negligence of the employee or the negligence of a fellow servant caused the injury, or that the employee assumed the risk of the employment.

The purpose of the workmen's compensation act was to cause the particular industry in which an employee was injured to bear the loss resulting from that injury so that society generally should not be compelled to support persons injured in industry. It substituted compensation for damages. It limited the liability of the employer to a definite amount if he became subject to the act; and, if he did not become subject to the act, if he was negligent at all, placed him at the mercy of the employee by taking from him the defenses of contributory negligence of the employee, negligence of fellow servants, and assumption of risk by the employee. The employee was deprived of a right to recover damages and limited to compensation. The purpose of the act was to make the loss caused by injury to employees a charge against the cost of production, the incidence of which was shifted to the ultimate consumer; to abolish the technical procedure of complicated lawsuits, the expense of contentious litigation which the workman was frequently unable to bear; to eliminate the interference of judicial tribunals with the administration of the act; to abolish the common-law rights of both employer and employee; and to vest the application of the statute to particular cases in a department, board, or commission.

"Proceedings under the workmen's compensation act are purely statutory,—administrative, not judicial,—inquisitorial, not contentious,—disposed of, not by litigation and ultimate judgment, but sum-

marily." *Hebert* v. *Ford Motor Co.,* 285 Mich. 607, 610.

The workmen's compensation act aims to give the benefit of any change in the injured workman's condition to the one entitled to it, whether it be the employer or employee or the insurance carrier. The full effect of an injury often cannot be determined in advance. The statute provides for a prompt award of an amount fixed by statute, based upon the apparent facts; for retention of jurisdiction by the department of labor and industry to adjust the compensation awarded, within the limits fixed by statute, as the facts indicate the results of the injury in the future.

The industrial accident board, and its successor, the department of labor and industry, in the performance of its functions under the workmen's compensation act, is not a court, but a fact-finding body. The rule of law is fixed by statute. The department of labor and industry cannot judicially determine cases. It does not perform judicial functions. It does not enter judgments. The statute provides for awards. It prescribes the rule of law to be applied in making such awards upon its· findings of fact. There can be no judicial review of the facts, in the absence of fraud.

Judicial power may not, under the Constitution, be vested in the department. How, then, can there be former adjudication when there can be no original adjudication,—when there is no finality of award,—when, by the express terms of the act, this court is limited, in the absence of fraud, "to review questions of law involved in any final decision or determination of said industrial accident board," (2 Comp. Laws 1929, § 8451 [Stat. Ann. § 17.186])—when, by the statute, the facts originally found "may

be reviewed by the industrial accident board" and the award ended, diminished or increased, subject to the maximum and minimum amounts provided by statute, if the board, member or deputy member finds that the facts warrant such action (2 Comp. Laws 1929, § 8453 [Stat. Ann. § 17.188])?

There is and can be no former adjudication by the department of labor and industry under this act. To adjudicate means to determine judicially. It involves the rendition of a final judgment, binding and conclusive upon the parties for all time, if unappealed from. 2 C. J. S. p. 49. No such judgment is or may be rendered by the department of labor and industry. The judicial power is here vested in the courts. Const. 1908, art. 7, § 1.

"The Constitution vests the judicial power in certain specific courts, and it *cannot be legally vested elsewhere.*" Andrews v. Otsego Probate Judge, 74 Mich. 278.

This rule is apparent from the language of the Constitution. This court has recognized the constitutional rule. *Anway* v. *Railway Co.,* 211 Mich. 592 (12 A. L. R. 26); *Bielecki* v. *United Trucking Service,* 247 Mich. 661; *Thompson* v. *Auditor General,* 261 Mich. 624.

The department of labor and industry in the performance of its functions under the workmen's compensation act does not enter final judgments. It makes awards by ascertaining the facts in each particular case and applying the statutory rule of law thereto.

An award is a decision or determination by an extrajudicial commission upon facts submitted to it. Black's Law Dictionary (2d Ed.), p. 110, and does not, under the statute, imply finality in the sense of becoming *res judicata. Owen* v. *Nampa & Meridian*

*Irrigation District,* 48 Idaho, 680 (285 Pac. 464); 2
C. J. S. p. 49.

In England, whence the workmen's compensation
law came, there is no written Constitution, no dis-
tribution of governmental powers unalterable by
statute. The workmen's compensation law there is
administered not by an executive department, but by
the district courts. In construing the statute here,
recourse has been had to English judicial decisions
and the improper use of the term *res judicata* seized
upon.

If there can be no adjudication in a judicial sense,
there can be no former adjudication.

The doctrine of former adjudication as applied to
judicial proceedings rests upon the basis that the
thing sought to be litigated has already been adjudi-
cated.

Under the workmen's compensation act, the stat-
ute provides:

"While the incapacity for work resulting from the
injury is total, the employer shall pay," et cetera.
2 Comp. Laws 1929, § 8425 (Stat. Ann. § 17.159).

And

"While the incapacity for work resulting from the
injury is partial, the employer shall pay," et cetera.
2 Comp. Laws 1929, § 8426 (Stat. Ann. § 17.160).

The doctrine of former adjudication as introduced
into the workmen's compensation law by judicial
decision first made its appearance in the Michigan
decisions in *Estate of Beckwith* v. *Spooner,* 183 Mich.
323 (Ann. Cas. 1916 E, 886), where it was said of a
petition for review of payments:

"On the hearing of such petition for review it can
be stated as a general rule that the essentials leading
up to the award, or its equivalent, are to be taken as

*res judicata, except the physical condition of the injured employee, which naturally and legally remains open to inquiry. Mead v. Lockhart, 2 B. W. C. C. 398.''*

What was involved in *Mead v. Lockhart*, 2 B. W. C. C. 398? Mead was employed in a shop which took fire and he jumped out of a window and landed on some red-hot glass. He sustained injuries, was taken to a hospital, and there developed scarlet fever. He applied for compensation. The doctors agreed he was incapable of doing a day's work in the shop. The county judge, in awarding compensation, said he had come to the conclusion the man's condition was only a temporary one and if, in four or five months, the employers thought he was capable of work, they might apply to vary the award. The employers applied to review the award, in October. The workman met this application by producing medical evidence to show that, in addition to the neurasthenia previously proved, he was suffering from actual permanent injury to the brain which produced symptoms of loss of taste on one side of the tongue, loss of smell on one side of the nose, and slight affection of the left eye and the hearing of the left ear. The weekly payments were continued. In March, the next year, the employers again applied for review of payments and tendered evidence to show that the medical evidence given in October as to the man's condition at that date was wrong. The master of the rolls pointed out that on an application to review payments which were being made at the time it came before the learned county judge in October last, that he then heard evidence and decided the man was not able to work and dismissed the application; that the employers made a fresh application, as they were entitled to do by the language of the act, and that came before the county judge in

March, 1909; that the issue then was Aye or No, was the workman at the date of this application in March, 1909, or was he not, wholly or partially incapacitated from work.   On review, it was said:

"Then it is said—and this is the view that commended itself to the learned judge—that he ought not to hear any evidence, and in fact he rejected any evidence, which might go to point *that part of the evidence given in October was inaccurate;* and it was suggested that the doctrine of estoppel somehow applies, *not merely in the sense that the parties are bound by the judgment given between the parties,* but that there was an estoppel on the point of evidence, that the reasons, or some of the reasons, which justified the learned judge in coming to the conclusion as to what the state of the man was in October, must for all times bind the county court judge in reference to any future application that is to be made.   In my view *that is entirely fallacious.*   The issue which alone was for decision by the learned county court judge in the present case was Aye or No, what was the man's condition in March, 1909? How the learned county court judge could be justified in rejecting evidence on that application, simply because he held last October that the man was not then altogether able to work, passes my understanding; but I really think this is a point which is covered by authority which would bind us even if I did not feel disposed to agree with it."

The court cited *Sharman* v. *Holliday & Greenwood, Ltd.,* (1904) 1 K. B. 235 (73 L. J. K. B. 176, 90 L. T. 46, 20 T. L. R. 135, 6 W. C. C. 147), and quoted therefrom.

Lord Justice Fletcher Moulton and Lord Justice Farwell agreed with the master of the rolls.

In *Sharman* v. *Holliday & Greenwood, Ltd., supra,* the workman, while in respondents' employ, met with an accident by which his leg was broken and he

was totally incapacitated for work. Compensation was awarded. Later, respondents applied to the county judge for review of weekly payments on the ground that applicant's incapacity for work had ceased. The county judge reduced the weekly payments to a nominal amount, but said the door was still open for the applicant to come again. Subsequently, plaintiff applied for a further review of weekly payments on the ground that he had since the previous hearing *sought work for several employers and been refused on account* of the state of his leg, and that on one occasion, *although he was able to get work, he was discharged* as being incapable of doing it on account of his condition. It was arranged that, to save the expense of bringing further evidence, counsel for both parties should attend before the county judge in order that the applicant might formulate the grounds on which a further review was asked for and the judge might decide whether *prima facie* they afforded any sufficient ground for reopening the case. At this preliminary hearing, the county court judge held that, as he had decided on the previous occasion the applicant's earning powers were not at that time diminished and as the present application was again *on the ground of total incapacity,* the matter was *res judicata* and that there was *no evidence tendered of any change of circumstances since the previous hearing,* and he dismissed the application. The court, by the master of the rolls, said:

"The question is whether, under such circumstances as existed here, the decision of the county court judge on the first occasion must govern the position of the parties for all time. Now, in the first place, I have grave doubts whether the doctrine of estoppel by judgment ought to be extended to a case of this kind, where the decision of the county court

judge on the first occasion was on a matter which was merely one of opinion, namely, whether the workman was in such a condition at a particular time as to be incapacitated from working in the future. It may be a question which in many cases can be conclusively decided by experiment, and in such a case, until it is so decided, the clearest opinion on that question on the part of the judge is founded merely on the evidence of experts, which may be displaced by the test of subsequent experiment. I can conceive a case in which the opinion of medical experts might be unanimous to the effect that a workman was capable of doing certain work, and yet, afterwards, upon his attempting to do it, he might find it impossible. Under such circumstances ought the doctrine of *res judicata* to apply in these cases, and the decision arrived at upon the evidence of experts to stand incontrovertible forever? I do not think that such a subject matter is one to which the doctrine of estoppel by judgment ought to be applied.''

The master of the rolls commented upon *Crossfield & Sons, Ltd.,* v. *Tanian,* (1900) 2 Q. B. 629 (69 L. J. Q. B. 790, 82 L. T. 813, 16 T. L. R. 476, 2 W. C. C. 141). Lord Justice Mathew was of the same opinion as the master of the rolls, and he added:

''The doctrine of *res judicata* is reasonably applied in cases where there has been a formal inquiry upon some issue distinctly raised in an action or other such legal proceeding as to the existence of a disputed fact; but I do not think it would be reasonable to apply that doctrine as suggested to an inquiry of this kind. *The condition of the workman's health at the time of the original award is in such a case as this a subject of medical opinion and speculation, and ought not in reason to be treated as conclusively determined * * * by the decision of the county court judge on the original hearing, as if it were a disputed fact which, upon conflicting evi-*

*dence, had been determined on the trial of an action.* The position taken up by the respondent's counsel was that, although symptoms should develop after the original inquiry, clearly traceable to the accident, but which were not before observed, *nevertheless the doctrine of res judicata applies, and there can be no further inquiry.* I can see nothing in the act itself which forbids further inquiry if, after the original inquiry, fresh symptoms develop or further incapacity for work is shewn to have arisen.''

Lord Justice Cozens-Hardy agreed.

*Crossfield & Sons, Ltd.,* v. *Tanian, supra,* the only authority relied upon in that case, involved an application on the part of respondent for arbitration as to the amount of compensation to be awarded him for the loss of his right eye. It was stated that his weekly earnings before the accident averaged 30 s. a week, that he was earning 17 s. 1 d. a week at the time of the application. The appellants omitted to file an answer within the time limited by the rules, but delivered an answer which was out of time and in which it was alleged that the respondent's average weekly earnings before the accident were only 19 s. 10½ d. The county judge held that as no proper answer had been filed appellants were precluded from giving evidence as to the amount of respondent's weekly earnings and that he must take his weekly earnings at the sum alleged by the respondent himself, there being no contradiction of the allegation in the answer of which appellants could avail themselves. He made an award and later an application was made for review of payments. It was admitted that no change had taken place in the circumstances since the original hearing and the county judge refused to review the weekly payment. Lord Justice A. L. Smith said:

''The short question which we have to decide is whether, * * * an employer can apply for a review

of a weekly payment when the state of circumstances existing at the date of the award has been in no way altered at the time that the application is made for a review.''

He held the county judge made no mistake, that no appeal was brought against his decision, and that the question could not be reopened by an application to review payments. Lord Justice Vaughan Williams dissented, saying:

''It has been suggested that in the exercise of its powers of *interlinear legislation* the court should read in the words 'if the circumstances are changed.' I do not find those words in the clause, and I hesitate about reading them in.''

Lord Justice Romer construed the provisions of the statute relating to review of payments, saying:

''Here, however, the facts are now as they were at the date of the award: no new fact has been brought forward by either party, and both sides when they came before the county court judge were bound to admit it.''

In *United Collieries, Ltd.,* v. *King,* 3 B. W. C. C. 546 (47 Scot. L. R. 41), it was sought to bar a reconsideration of the case because the medical referee reported that incapacity had ceased October 20, 1908. The workman acquiesced until May 8, 1909. It was said:

''To hold that arbitration proceedings otherwise competent and lawful can be barred by a medical referee's report (which *is only a piece of evidence*) seems to me to be a proposition which cannot be maintained under this act or otherwise.''

The court held the medical referee's report was no basis for denying review of payments.

In *Radcliffe* v. *Pacific Steam Navigation Co.,* (1910) 1 K. B. 685 (3 B. W. C. C. 185, 79 L. J. K. B.

429, 102 L. T. 206, 54 S. J. 404, 26 T. L. R. 319) plaintiff was injured and awarded compensation, but was taken back by his employer at *the old wages.* Defendants applied to reduce the compensation. The county judge decided the workman was capable of earning his old wages, but his chances of employment were reduced by the result of the injury, and reduced the award to 1 s. a week. Later, plaintiff applied for a review of the award, proposing to charge, *first,* his finger which was injured was in the same condition as when the last award was made; and *second,* that he was unable to obtain work after repeated attempts to obtain employment. The employers raised the question of *res judicata.* The county court held it had jurisdiction to review payments, and restored the compensation of the workman to 15 s. a week, *subject to appeal on the ground of res judicata.* Lord Cozens-Hardy, M. R., said:

"It must never be forgotten that a review under clause 16 is not an appeal nor is it a rehearing. It implies the introduction of new elements, or—as has been often said—a change of circumstances. It is not at first obvious that *the doctrine of res judicata can in any way apply to an award which is expressly made liable to review.*"

But he held, (a) that an award stating a man's wages at the date of accident were *x* shillings could not be reviewed on such proceedings, citing *Crossfield & Sons, Ltd.,* v. *Tanian, supra,* saying:

"That is a positive fact, not admitting of a change of circumstances, and not a matter of opinion;"

(b) the same consideration would prevent the reopening of an award finding A. B. is, or is not, a dependent; (c) on the other hand, it has been held that *an award based upon medical opinion of a man's physical condition at one time* in no way prevents

a different award at a subsequent date when experiment has proved that the views of the doctors were wrong, citing *Sharman* v. *Holliday & Greenwood, Ltd., supra,* and quoting with approval the language of Lord Collins in that case that

"*There is a change of circumstances where subsequent experiment has shewn that the previous opinion based on expert evidence was wrong.*"

Lord Justice Fletcher Moulton pointed out that plaintiff was not prepared to show that the mutilation had in any way changed since the last award. He said:

"The doctrine of *res judicata* does not apply to a decision as to the amount of weekly payment to the injured workman when it is made the subject of an application to review, although it may apply to some of the facts proper to be considered on the occasion of such a review."

He further said:

"The average weekly earnings of the workman before the accident is a question of fact relating to a past date, and, therefore, if it has been litigated between the parties on any previous occasion (as, for instance, on the occasion of the original award) it may fairly be looked upon as *res judicata* and be treated as a matter that cannot be reopened. But the amount of wages which he is earning or able to earn in some suitable employment or business at the date of the review is *ex necessitate rei a matter which has not been, and could not have been, litigated between the parties prior to the date of the review, and therefore cannot come under the head of res judicata.* It is evident, therefore, that the amount to be awarded on review is not and cannot be *res judicata,* since one of the necessary elements that must go to decide it is not subject to the *res judicata.* This difficulty was felt by counsel for the appellants,

who were forced to admit that if the circumstances had changed they could not contend that the amount proper to be awarded was *res judicata*. To my mind that amounts to giving up the contention. The proposition that it is open to the applicant to have a review if he puts forward evidence of a particular kind, but that the matter is *res judicata* if he does not, is unintelligible to me. Whether or not the matter is *res judicata* must depend solely upon whether the issue to be decided by the county court judge has already been litigated and decided between the parties. If the decision on the previous occasion is to be held to constitute a decision binding for all time, although one of the elements going to that decision is the amount of wages that the applicant is earning, or able to earn, at the moment of the inquiry, then no change in the amount of such wages can get rid of the plea of *res judicata,* and review would be impossible. If, on the other hand, it is not binding for all time, there can be no question of *res judicata,* and on the occasion of a review *the county court judge is bound to consider what should be the amount of the weekly payment upon the facts relating to the then state of things.*"

Lord Justice Buckley said:

"The workman contended that his incapacity for the future by reason of the accident had been placed too low when it was fixed at 1 s. a week. The contention was based not upon any alteration in the labour market (for fluctuations in the market ought not to be taken into consideration), but upon facts which he wished to adduce to shew that *circumstances since June, 1909, had put him in a position to prove that his incapacity arising from his mutilation had been estimated in June at too low a sum.* It seems to me that by the language of Sched. I (16) of the statute this matter is made subject to review, and that finality is reached only when as in *Nicholson* v. *Piper,* (1907) A. C. 215 (76 L. J. K. B. 856,

97 L. T. 119, 23 T. L. R. 620, 51 S. J. 569, 9 W. C. C. 123, 96 L. T. 75), an award has been made that the weekly payments cease altogether on the ground that incapacity has ceased."

In *Dundee, Perth & London Shipping Co.* v. *Willcock,* 9 B. W. C. C. 471, a workman was injured and the county judge found he was suffering from permanent partial disability and awarded 5 s. a week compensation. The employers applied for a review of payments. Lord Cozens-Hardy, M. R., said:

"The learned judge seems to have thought that, having regard to his earlier award, there was something in the nature of an estoppel, but there can be no estoppel in a matter of this kind, such as there might be in respect, for example, of a finding as to the amount of the workman's wages. *The view of a learned judge as to a man's physical condition is a matter of opinion as to which there can be no estoppel."*

Lord Justice Pickford agreed and quoted with approval the language of Lord Collins in *Sharman* v. *Holliday & Greenwood, Ltd., supra,* above quoted. The English rule is thus summed up in 20 Halsbury's Laws of England, p. 231, relying upon the cases above mentioned, and others:

"The physical condition of the workman and his capacity or incapacity for work at different periods can never be *res judicata;* and an application to review on the ground that the physical condition of the workman has changed since the last arbitration must be entertained by the arbitrator. There can be no estoppel on this question."

The word "adjudication" if used in connection with the workmen's compensation act does not imply finality in the sense of becoming *res judicata.* The industrial accident board, and its successor, the de-

partment of labor and industry, under the workmen's compensation law, is not a court. It has no judicial powers. It cannot adjudicate. And, even if it could, it cannot well make an adjudication as to a man's physical condition at a particular time which binds and governs him at some future time.

There is no mention in the workmen's compensation act of *final settlement receipts*. Such receipts are not contemplated by the act.

"No agreement by an employee to waive his rights to compensation under this act shall be valid." 2 Comp. Laws 1929, § 8436 (Stat. Ann. § 17.170).

The statute provides for agreements *in regard to compensation,* to be filed with the department of labor and industry, which, "if approved by it, shall be deemed final and binding upon the parties thereto. Such agreements shall be approved by said board only when the terms conform to the provisions of this act." 2 Comp. Laws 1929, § 8444 (Stat. Ann. § 17.178).

Whatever force and effect may be given to a final settlement receipt is derived from the action of the department of labor and industry, acting within the scope of the powers conferred upon it by statute, and not from any act or agreement of the injured workman whose agreement to waive compensation is *void,* because he is prohibited by statute from entering into it. 2 Comp. Laws 1929, § 8436 (Stat. Ann. § 17.170). This is clear from the statute and from *Winn* v. *Adjustable Table Co.,* 193 Mich. 127 (13 N. C. C. A. 612); *Dettloff* v. *Hammond, Standish & Co.,* 195 Mich. 117 (14 N. C. C. A. 901); *Shaffer* v. *D'Arcy Spring Co.,* 199 Mich. 537; *Brabon* v. *Gladwin Light & Power Co.,* 201 Mich. 697; *Adams* v. *W. E. Wood Co.,* 203 Mich. 673; *Pocs* v. *Buick Motor Co.,* 207 Mich. 591; *Leitz* v. *Labadie Ice Co.,* 211 Mich. 565; *Norbut* v. *I. Stephenson Co.,*

217 Mich. 345; *Seem v. Consolidated Fuel & Lumber Co.*, 234 Mich. 637; *Richards v. Rogers Boiler & Burner Co.*, 252 Mich. 52. The final settlement receipt here was approved by the department of labor and industry and the employee's compensation stopped. It could have been lawfully approved "only when the terms conform to the provisions of this act." 2 Comp. Laws 1929, § 8444 (Stat. Ann. § 17.178). In order to approve this final settlement receipt, the department of labor and industry must have found, and did find, that at the time such order of approval was made, plaintiff had fully recovered, and was not then suffering from any compensable injury.

The statute which provides that "any weekly payment under this act may be reviewed by the industrial accident board or by any member or deputy member thereof, at the request of the employer, or insurance company carrying such risk, or the commissioner of insurance, as the case may be, or the employee, and on such review it may be ended, diminished or increased, subject to the maximum and minimum amounts above provided, if the board or member or deputy member finds that the facts warrant such action," (2 Comp. Laws 1929, § 8453 [Stat. Ann. § 17.188]) gives to the department of labor and industry authority to award compensation for the original injury in case there was apparent recovery, or agreed recovery, when in fact there was no real recovery from the injury. The findings of fact made by the industrial accident board acting within its powers are, in the absence of fraud, conclusive (2 Comp. Laws 1929, § 8451 [Stat. Ann. § 17.186]), and may not be inquired into here.

Section 8453, 2 Comp. Laws 1929 (Stat. Ann. § 17.188) is a part of the workmen's compensation act, in accord with its object to protect both the employee and employer by permitting the depart-

ment of labor and industry to change its findings to comply with the facts and alter its award if either too large or too small. The nature and effect of an injury in many cases is not capable of immediate determination by the most proficient physicians and surgeons. *Choctaw Portland Cement Co.* v. *Lam,* 79 Okla. 109 (189 Pac. 750). The purpose of the act is to enable the department of labor and industry to make an immediate award based upon the condition of the injured workman apparent at the time, to enable the employee to live, and to permit the full extent of the disability resulting from the injury to be embraced within the scope of the original award and subsequent or supplemental awards.

The statute providing for a review of weekly payments may properly be invoked in cases where disability appears to have ended and the case is finally closed if the injured employee suffers a recurrence of his former trouble traceable to the original injury. *Comer's Case,* 131 Maine, 386 (163 Atl. 269).

In *Fort Branch Coal Mining Co.* v. *Farley,* 76 Ind. App. 37 (130 N. E. 132, 131 N. E. 228), the workman was injured September 4, 1917. On October 15, 1917, he signed a receipt for compensation for total disability, but filed no claim with the board for further compensation until December 11, 1919. It was contended that his settlement receipt having been approved, there could be no further compensation. It was said:

"Suppose the parties, fairly and honestly, should enter into an agreement to the effect that the workman's total disability had ceased, Would that establish the fact irrevocably? They may have been mistaken. On returning to his labor the workman may discover his error; an actual trial may prove that he is wholly unable to work in any capacity; and in that case it would not do to say that the agreement, which rests on a mutual mistake of fact, marks the

termination of the compensation period stated in the award.

"It would seem that the employer, being of the opinion that the workman's total disability had ended and that he ought to be relieved from further payments, might petition the board to determine the fact and make it a matter of record. But even the determination by the board might not be permanent. The cessation of the workman's total disability might have been only apparent or temporary. If his total disability should recur it would become the duty of the board to order further payments of compensation at the rate fixed for total disability. By the inherent nature of the plan on which the compensation act rests, it must be so; and one of the objects of the board's continuing jurisdiction is to accomplish that very purpose. In cases like the one at bar the compensation period stated in the original award can terminate in one of two ways only: (1) By the lapse of the maximum time fixed by statute; or (2) by the actual (not apparent) permanent (not temporary) cessation of the total disability."

In that case, an application was made for rehearing which was granted and, in disposing of this case upon rehearing, it was said:

"The facts in this case furnish a concrete illustration of the danger that lurks in the plan for which appellant contends. The undisputed evidence shows that the employee suffers from a severe injury to his spine—an injury which is likely to result in death. At intervals he has been able to do some work; but muscular exertion inevitably causes the vertebra to slip, thereby rendering him again helpless. Before signing the so-called final receipt he asked the doctor about returning to work. The doctor said 'You might try it.' He said to the employer's bookkeeper, 'If I sign this receipt, suppose the trouble should come back?' The bookkeeper answered, 'The injury will show for itself.' He then signed the receipt and

returned to his work in the mine. In less than two weeks he was girt with bandages prepared for him by his wife, and because of his broken back he was working on his knees. (This in a humane age!) The only rational inference is that he was importuned to sign the receipt by the insurance carrier. No court would be justified in holding that the signing of a receipt under such circumstances amounts to a 'termination of the compensation period,' even though the receipt contains a recital to the effect that total disability had ceased."

In *Noel* v. *Kozak,* 148 Okla. 210 (298 Pac. 298), Kozak was a coal miner, injured November 25, 1927, and quit work the same day. August 2, 1928, he receipted for $605.85 on account of temporary total disability. This was approved by the commission August 23, 1928. September 20, 1928, he filed a motion to review the award of August 2, 1928, stating there was no changed condition in his case but that he was unable to work. The commission found he suffered as a further result of the accidental injury a total disability from November 11, 1929, to June 16, 1930. The court held that under the statutes of Oklahoma the commission had a continuing power and jurisdiction to review its award on the ground of a change in condition only; that this provision of the statute should be liberally construed in the interest of the employee; that it was difficult to make any set of rules applying to every case; and it further said:

"Stress has been made by petitioners in their brief that the doctrine of *res judicata* is applicable in this case; that, by reason of the fact the commission found, on December 17, 1928, respondent was not entitled to any further compensation on account of change in condition, and no appeal having been taken therefrom, said order of the commission became final, and that the commission was without authority thereafter to reopen said matter.

"The matter settled by the commission was that, at the time of the second hearing on December 17, 1928, there was no change in condition of the respondent to justify a further compensation at that time. There was no finding that respondent would not need any further physical examination in the future, or that he could not be later classified by reason of change in condition from the temporary total disability to the permanent total disability class.   *   *   *

"The respondent, after the industrial commission found at the time of the hearing on his motion requesting further compensation that he was not entitled to further compensation by reason of changed condition resulting from the original injury, filed a subsequent motion for further compensation by reason of his changed condition."

The court quoted the applicable Oklahoma statute which is substantially similar to that of Michigan, and said:

"The language is clear and unambiguous and it cannot be contended that the commission did not have the right and authority under the provisions of the act to conduct a further hearing to ascertain whether or not there was a change in condition in respect to the original injury as it affected the respondent, even though the commission may have found, and did find, at the hearing of December 17, 1928, that the respondent was not entitled at that time to any further compensation by reason of a change in condition. It did not preclude the commission to hold a subsequent hearing in respect to making such modification or change with respect to its finding in its former original order relating thereto, if, in its opinion, it was justified in doing so. We do not hold that the commission was trying the same question of fact at the last hearing, on December 17, 1928, which was determined at the hearing when it rendered its award for temporary total disability. The fact that there was no change in the condition

of the respondent at the time in December 17, 1928, in reference to his original injury, does not warrant this court in establishing or finding that there was not a change in condition of respondent at the time of the last hearing. The hearing on December 17, 1928, was in reference to whether there was any change in condition at that time of respondent; that is, of course, some substantial change in condition. The commission did not find, nor was it called upon to make a finding, that there would thereafter be, or not be, a change in condition of respondent in respect to the original injury received. Medical science is not so exacting and might experience some difficulty in attempting to determine this question with mathematical certainty. There is competent evidence reasonably tending to support the finding of the commission that the condition of the respondent was changed by reason of the original injury received by said respondent, and, in view of the foregoing authorities, we do not feel that the commission should be deprived in the case at bar of its jurisdiction in determining whether or not its former findings or order should be modified, if, in its opinion, it was just and proper to do so, as it so found, especially where it did not, and could not, involve the same identical subject-matter during the time within which the same was considered.''

In *Klum* v. *Lutes-Sinclair Co.*, 236 Mich. 100, 105, it was contended an adjudication of plaintiff's partial disability, unappealed from, was *res judicata* in a subsequent proceeding to recover compensation for total disability. It was said:

''Construction of the *res judicata* rule as contended for by defendants would emasculate the plain provisions of [2 Comp. Laws 1915] § 5467 * to a point where the department could never increase the compensation in a case where an order not appealed

* 2 Comp. Laws 1929 § 8453 (Stat. Ann. § 17.188).—Reporter.

from is an award for partial incapacity, although on review total incapacity within the time limit was shown beyond question. Such narrow construction is not within the letter of the section in question nor spirit of the compensation act.''

No agreement in regard to compensation could have been approved unless its terms conformed to the provisions of the workmen's compensation act (2 Comp. Laws 1929, § 8444 [Stat. Ann. § 17.178]), and no agreement by the employee to waive compensation to which he was entitled under the act was or could be valid and enforceable. 2 Comp. Laws 1929, § 8436 (Stat. Ann. § 17.170).

Upon application to approve the final settlement receipt, the department of labor and industry found plaintiff's disability had ceased. That finding was conclusive, in the absence of fraud (2 Comp. Laws 1929, § 8451 [Stat. Ann. § 17.186]), and his compensation was properly stopped under the statute. Upon a subsequent application to review payments, plaintiff's testimony showed he was partially disabled due to the injury and the department of labor and industry so found (and such finding is binding upon this court), and reinstated compensation. Such action was in accordance with the purposes of the workmen's compensation act and the decisions of this court.

The vice of the cases relied upon by applicants on rehearing is that they ignore the statute, confound the testimony and acts of the plaintiff with the findings of the department of labor and industry, substitute what plaintiff claims for what the department of labor and industry found, and penalize plaintiff for his attempt to rehabilitate himself.

This court has attempted to formulate a rule in accord with the statute by which employers (by procuring so-called settlement receipts upon the prom-

ise to reinstate injured employees in their jobs, and upon such reinstatement procuring approval by the department of labor and industry of such receipts, when the injured employee is still suffering from disability, then discharging the injured employee because of inability to work and opposing any attempt at the reinstatement of compensation on the ground of *res judicata,* estoppel, agreement, settlement receipt, and failure to show a change of condition) could not thwart the beneficent purposes of the statute. When this court follows the statute, this result is clearly attainable.

*Pentrack* v. *Motor Products Corp.,* 276 Mich. 357, came here on review of an order awarding further compensation after an award stopping compensation. It was said:

"In the previous hearing to stop compensation, plaintiff testified that she was unable to work, but the deputy commissioner evidently rejected her testimony and relied upon other evidence which was to the effect that plaintiff had recovered sufficiently so as to be able to return to her former employment. An appeal from this award not having been perfected, plaintiff's condition as of that date is *adjudicated.* * * *

"The department found that plaintiff was totally disabled from following her usual employment. We think there is some competent evidence upon which such a finding could be made and as we have said upon other occasions, we do not weigh the evidence."

In *Smith* v. *Pontiac Motor Car Co.,* 277 Mich. 652, 657, it was said, referring to 2 Comp. Laws 1929, § 8427 (e) (Stat. Ann. § 17.161 [e]):

"If the department of labor and industry stopped plaintiff's compensation because he was earning temporarily more than he was earning at the time of his injury and plaintiff was discharged after such

award and unable to secure employment, or if he secured employment but was able to secure it only at reduced wages, he would, unless this proviso of the statute protects him, be immediately met with the claim there was no change in his physical condition since the order of the department of labor and industry stopping his compensation was made and consequently he could not be reinstated in his right to compensation."

In *Markey* v. *S. S. Peter & Paul's Parish,* 281 Mich. 292, 300, it was said:

"When, after such reduction or stopping of compensation by reason of employment and not because of a recovery of physical capacity to work, the employee seeks to have compensation restored by reason of the fact that he has lost his employment, it would be grossly unjust to require him to make a showing of actual change of physical condition. Such a ruling would discourage attempts at rehabilitation by imposing an unfair hazard thereon. In *MacDonald* v. *Great Lakes Steel Corp.,* 274 Mich. 701, it was held that where a disabled employee had had employment, compensation was stopped therefor and he had lost his employment, the department would be justified in holding that the employment had established a *prima facie* earning capacity but— 'the ruling does not require the employee to show a change of physical condition after his discharge. Nor does it prevent his showing his actual earning capacity after the employment ceases, as affected by his physical condition, his ability to work, the market for his labor and other pertinent circumstances.'

"In the case at bar, the fact that plaintiff is actually earning more money than his wages at the time of his injury, in a recognized employment, renders the proviso operative and entitles the employer to an award stopping compensation.

"In order to administer the statute properly, it is apparent that the department of labor and indus-

try should make specific, instead of formal, orders stopping or reducing compensation. Ordinarily such an award is *res judicata* of the physical condition of the employee and compensation could not be resumed without a showing of change of physical condition. Consequently when the department reduces or stops compensation for the sole reason that the employee is engaged in a wage-earning employment and without reference to his physical condition, the reason for the award should be specifically stated in order that an undue and unjust burden is not cast upon the employee when his employment ceases.''

In *DeTroyer* v. *Ernst Kern Co.,* 282 Mich. 689, 694, it was said:

''The purpose of the law is not only to compensate the employee while he is incapacitated, but also to encourage him to rehabilitate himself. This can be accomplished by his going back to his regular work or by giving him less strenuous work or a 'made job,' and thus permit him to try to return to gainful employment. It would be a harsh and inhuman rule which would hold that his attempt at rehabilitation or his mistaken belief that he may have recovered precluded him from obtaining further compensation, upon the continuance or reappearance of disability, though not greater than existed at the time the agreement to suspend payments was entered into. To uphold the agreement to suspend compensation is wholly within the spirit of the law. It is for the benefit of both parties. To hold otherwise would encourage malingering or would deter an honest employee from making an effort to return to work and thus end compensation payments, if any doubt existed on his part as to whether he had completely recovered. It is in the interest of the employer, the employee, and the public to have the employee return to gainful employment as soon as possible. If the employee has not yet recovered

from disability but believes that he can resume his former occupation, or do lighter work, and if the signing of an agreement suspending compensation is not one of final settlement, he will more willingly attempt to take his place as a useful member of society. The spirit of the law is set forth in our opinion, written by Mr. Chief Justice FEAD, in *Markey* v. *S. S. Peter & Paul's Parish,* 281 Mich. 292, wherein it is said:

" 'But when, after such reduction or stopping of compensation by reason of employment and not because of a recovery of physical capacity to work, the employee seeks to have compensation restored by reason of the fact that he has lost his employment, it would be grossly unjust to require him to make a showing of actual change of physical condition. Such a ruling would discourage attempts at rehabilitation by imposing an unfair hazard thereon. In *MacDonald* v. *Great Lakes Steel Corp.,* 274 Mich. 701, it was held that where a disabled employee had had employment, compensation was stopped therefor and he had lost his employment, the department would be justified in holding that the employment had established a *prima facie* earning capacity but—"the ruling does not require the employee to show a change of physical condition after his discharge. Nor does it prevent his showing his actual earning capacity after the employment ceases, as affected by his physical condition, his ability to work, the market for his labor and other pertinent circumstances." ' "

In *Catino* v. *Morgan & Wright Co.,* 272 Mich. 154, it was said:

"The department found that since the last preceding hearing plaintiff had suffered a change of condition for the worse as to his earning capacity. This finding is not nullified (as is claimed by appellant) by the fact that plaintiff claimed at the former hearing he was *then* totally incapacitated from doing the work of a cement finisher, or by the further fact that at the present hearing he still testified to the same effect. Obviously the department found as a fact in the August, 1927, proceedings that plaintiff, notwithstanding his claim to the contrary, was not then totally incapacitated. But in the present proceedings there is testimony which strongly tends to establish plaintiff's total disability as found by

the department; and on this review by certiorari that finding must be affirmed."

In *Adams* v. *C. O. Barton Co.*, 274 Mich. 175, it was said:

"An adjudication of what the man's physical con-dition is at one time is ordinarily no evidence of what his physical condition may be a year later.

"It is claimed that inasmuch as this court has held that one found to be totally disabled could not grow worse, one found to be partially disabled cannot be found at a subsequent time to have grown better. One found to be partially disabled at one time is not precluded from showing he is totally disabled at a subsequent time even though he claimed total dis-ability at the time the department found he was but partially disabled, and this for the reason that man's condition constantly changes."

In *Gustafson* v. *Manning, Maxwell & Moore, Inc.*, 275 Mich. 146, plaintiff received compensation for total disability up to and including September 26, 1931, when a final settlement receipt was filed and approved. A minority of the court said:

"This receipt, having been approved by the de-partment, is an adjudication as to plaintiff's dis-ability on that day. If plaintiff was totally disabled from performing any labor on September 26, 1931, and there is an adjudication to that effect which he is estopped to deny, he has not shown such a change in his physical condition immediately following this period as would warrant an. award of additional compensation."

A majority of the court, however, did "not agree that the approval of the settlement receipt was an adjudication that plaintiff on that day was totally incapacitated from labor," and said:

"To give such effect to the approval would mean that the department approved stopping of compen-

sation in the face of its own finding of plaintiff's total disability, which finding, under the law, would have required continuance of his compensation and disapproval of the receipt."

In *Van Atta* v. *Henry,* 286 Mich. 379, what was said in the majority opinion in *Gustafson* v. *Manning, Maxwell & Moore, Inc., supra,* was quoted with approval in the unanimous opinion of the court.

*Van Atta* v. *Henry, supra,* was before this court on a petition for further compensation. A final settlement receipt had been signed by plaintiff and approved by the department of labor and industry. After reviewing the testimony, it was said:

"It is thus apparent that plaintiff believed his injury was not serious and assumed he would be able to resume work shortly. On this showing the department was justified in approving the agreement. However the assumption that plaintiff had recovered or would recover shortly from his injury proved erroneous, and on this record there is a sufficient showing of change of condition for the worse to justify an award for further compensation."

In *Houg* v. *Ford Motor Co.,* 288 Mich. 478, plaintiff had been awarded specific compensation for the loss of his left eye. August 16, 1934, he filed a petition for further compensation claiming he had lost the vision of his right eye by reason of the injury to his left eye. The department of labor and industry found against him. No appeal was taken. August 12, 1936, he filed a further petition claiming he had been industrially blind in his right eye since July 15, 1935. Testimony was taken and an award in favor of plaintiff made which was sought to be reviewed. Defendant claimed the order of July 11, 1935, denying the petition of August 16, 1934, was *res judicata.* It was held that the doctrine of *res*

*judicata* is limited in its operation when sought to be applied to a man's physical condition which constantly changes and under a statute which provides that weekly payments may be reviewed and ended, diminished or increased as the facts warrant (2 Comp. Laws 1929, § 8453 [Stat. Ann. § 17.188]); that what was adjudicated by the order of July 11, 1935, was that plaintiff had not in the proceeding then before the department sustained the burden of proof that he was blind in his right eye, and that he was totally disabled. It was said:

"The department found plaintiff was not blind and was not totally disabled. In this proceeding, the department found the allegations of petitioner were true; that he was industrially blind and totally disabled. These findings were warranted by the facts. The order of July 11, 1935, was not an adjudication which prevented the petitioner from showing the facts."

In *Casey* v. *Railroad Co., ante,* 601, it was said:

"When the awards of 1932 and 1934 were made by the department, it adjudicated that at that time plaintiff had fully recovered from his injuries. Otherwise, it had no right to stop compensation. The adjudication of the department, not plaintiff's testimony, controls. Plaintiff claimed at the time he filed his last petition he was totally disabled. Testimony was taken before the department of labor and industry and it so adjudicated. This is an adjudication of such a change of physical condition as is contemplated by the statute and fully sustains the award of the department."

It has heretofore been thought that, under these cases and under facts similar to those in this case, plaintiff has shown such a change of condition since the approval of the final settlement receipt signed by

him, based upon his recovery from the injury, as to show a recurrence of disability, a change of condition sufficient to sustain the award of the department.

Stripped of its verbiage, all there is to this case is, *first,* plaintiff suffered an injury arising out of and in the course of his employment, for which he was awarded compensation; *second,* he stated, or was led to state, that he had recovered. Relying upon this statement, the department of labor and industry so found as a fact and stopped compensation; *third,* plaintiff subsequently found he had not recovered from the injury and made application for further compensation. Testimony was taken and the department of labor and industry found as a fact he was suffering from disability because of the continuance or recurrence of disability arising out of his original injury, and awarded compensation.

The findings of fact by the department of labor and industry were warranted by what was before it.

Award affirmed, with costs to plaintiff.

BUSHNELL, SHARPE, and McALLISTER, JJ., concurred with POTTER, J.

NORTH, J. (*concurring*). On this rehearing the controlling issue as to plaintiff's right to further compensation, as awarded by the department, is whether his earning capacity was less when his present petition was filed than it was adjudicated to have been at the last preceding hearing, *i. e.,* in December, 1936, when the parties filed a final settlement receipt which was approved by the department. The effect of the agreement of the parties upon a final settlement and its approval by the department is plainly stated in our opinion filed on the original hearing of this case. In part it reads:

"There is no doubt that the department of labor and industry at the time it approved the final settlement receipt, if it adjudicated anything, adjudicated that at that time plaintiff had fully recovered from his injuries. Otherwise, it had no right to stop compensation. It is the adjudication of the department, and not plaintiff's testimony, which controls."

Approximately a year later plaintiff filed his present petition; and beyond any question there is testimony sustaining the department's finding that plaintiff was then suffering disability due to his injury which arose out of and in the course of his employment with defendant. On such a record clearly plaintiff's earning capacity was less when his present petition was before the department than a year prior when (by approval of the settlement receipt) the department adjudicated he had fully recovered. Under such circumstances plaintiff was entitled to an award of compensation.

The character and force of the approved settlement receipt must be viewed in the light of the admitted fact that this is a rehabilitation case; and the law applicable to that type of case should be here applied. See *Markey v. S. S. Peter & Paul's Parish*, 281 Mich. 292; *DeTroyer v. Ernst Kern Co.*, 282 Mich. 689. The department's finding recites:

"In the instant matter it is apparent that the final settlement receipt was executed not because plaintiff's physical condition had improved following the accident but to attempt his rehabilitation at lighter work."

Except the executed final receipt is approved by the department incident to attempted rehabilitation, it should be held final and conclusive on all parties concerned. But if it appears from the department's records or if on the hearing the department finds that the execution of the final settlement receipt and

its approval was simply an attempt to rehabilitate and that such attempt has failed, the receipt in and of itself should not be held a bar to an award of compensation to an employee found to be entitled thereto.

For the reason hereinbefore indicated our former decision for affirmance should stand.

BUTZEL, C. J., and BUSHNELL, J., concurred with NORTH, J.

WIEST, J. (*dissenting*).  On rehearing we are of the opinion the award should be vacated.

In the application for rehearing the attorney general, at the request of the commissioners of the department of labor and industry, confessed error in the award and, as *amicus curiae,* joined in asking for a rehearing on the grounds that the decision is irreconcilable with the established law of this State and the doctrine of *stare decisis.*

Plaintiff was injured August 6, 1936, went back to somewhat lighter work December 15, 1936, and worked until November 13, 1937, when the plant shut down for want of business and all of the employees were let go; and at the time of the hearing the plant had not reopened.

The department found there had been no change in plaintiff's physical condition and held that it was not necessary for plaintiff to show a change in physical condition in order to have compensation reinstated and, therefore, treated the stoppage as no bar and reinstated an award.

That there may be no mistake about this we quote from the opinion of the department:

"Based on the fact that plaintiff admits his physical condition has not changed since the accident, defendant contends that the deputy commissioner's

award was a proper one in that plaintiff had not sustained the burden of proving a change of physical condition lessening his earning capacity. We are unable to agree with such contention. * * * In the instant matter it is apparent that the final settlement receipt was executed not because plaintiff's physical condition had improved following the accident but to attempt his rehabilitation at lighter work. Such efforts should not be discouraged which would result if we determined under the instant facts that it was necessary for plaintiff to show a change of physical condition in order to have his compensation reinstated.''

When plaintiff returned to work and signed the final settlement receipt, stating therein that he had fully recovered, and the receipt was approved by the department, there was an award of stoppage, determinative of rights as of that date and subsequent thereto unless and until such time, if any, there was a physical change for the worse affecting his ability to work.

In this jurisdiction the award stands in the nature of *res judicata,* subject to change only by reason of subsequent intensified physical condition lessening earning capacity.

The award of the department was upon a finding of no change in plaintiff's physical condition and, therefore, contrary to our repeated holdings; and the opinion affirming the award overrules *Anderson* v. *Ford Motor Co.,* 232 Mich. 500; *Peet* v. *City Bakery Co.,* 238 Mich. 431; *Kilgour* v. *Remington-Rand, Inc.,* 252 Mich. 657; *McKay* v. *Jackson & Tindle, Inc.,* 268 Mich. 452; *Runnels* v. *Allied Engineers, Inc.,* 270 Mich. 153; *Smith* v. *Pontiac Motor Car Co.,* 277 Mich. 652; *Blust* v. *National Brewing Co.,* 285 Mich. 103. It, however, is in line with Mr. Justice Potter's dissents in *Blust* v. *National Brewing Co., supra,* and *Dyer* v. *McQuistion,* 273 Mich. 327.

In *Butler* v. *Millman,* 271 Mich. 113, we held, in line with all former opinions on the subject, that approval by the department of final settlement receipts has the force of an award and determines facts barring reopening, except upon proof of a change for the worse in physical condition.

We have uniformly held that the doctrine of *res judicata* applies to awards under the workmen's compensation act of this State. *Lumbermen's Mutual Casualty Co.* v. *Bissell,* 220 Mich. 352 (28 A. L. R. 874) ; *American Life Ins. Co.* v. *Balmer,* 238 Mich. 580; *Besonen* v. *Campbell,* 243 Mich. 209; *Hebert* v. *Ford Motor Co.,* 285 Mich. 607. See, also, *Estate of Beckwith* v. *Spooner,* 183 Mich. 323 (Ann. Cas. 1916 E, 886) ; *Levanen* v. *Seneca Copper Corp.,* 227 Mich. 592; *Catina* v. *Hudson Motor Car Co.,* 272 Mich. 377.

In *Nevels* v. *Walbridge Aldinger Co.,* 278 Mich. 214, we held:

"An award made upon oral stipulations before the department is binding on the parties. *McKay* v. *Jackson & Tindle, Inc.,* 268 Mich. 452. A binding award is *res judicata* even though it be erroneous. *Ammond* v. *Muskegon Motor Specialties Co.,* 265 Mich. 211. Consequently, the award of June 5, 1933, was *res judicata* of plaintiff's right to compensation, was equivalent to an award stopping compensation and, upon plaintiff's present petition, it was necessary that he show a change of condition since June, 1933."

In remanding that case we said:

"Specifically, the department will determine the time and degree of change of physical condition since the award of June, 1933."

The award, approving the final settlement receipt, bars further action contrary thereto in the nature

of a rehearing but leaves permissible a reopening of the case only upon a showing that a change in plaintiff's physical condition, resulting from the injury, is worse than it was at the former hearing and, therefore, a new cause for disability compensation is presented for an award.

There is no claim that the settlement receipt was obtained by fraud and, if it were so claimed, the remedy is not with the department but in a court of equity.

In the former majority opinion it was stated:

"It is the adjudication of the department, and not plaintiff's testimony, which controls."

In this case the finding of the department was based on the testimony of plaintiff that there had been no change in his physical condition and, under such finding, there was an award by the department, termed a reinstatement, but, in fact and law, it was a rehearing and reversal of the award on the final settlement receipt.

If the award is affirmed the force and effect of an award upon a final settlement receipt expires with its announcement and entry, and our holding will constitute a departure from all our former decisions, will materially enlarge the powers of the department, eliminate any and all application of the doctrine of *res judicata,* and open the way for rehearings upon matters heretofore considered closed by uniform rulings of this court.

CHANDLER, J., concurred with WIEST, J.