CAVANAGH, J.
(dissenting). Today, the majority judicially creates new procedures, a heightened evidentiary standard, and compelled discovery for workers’ compensation hearings. The majority exercises its creativity at the expense of Michigan workers, whom this opinion places at “significant risk.” Ante at 283. Because these new provisions subvert the will of the Legislature, ignore the language of the Worker’s Disability Compensation Act (WDCA), and recklessly risk the well-being of Michigan workers, I dissent.
The Legislature created a careful balance of critical interests in the WDCA. The act extinguished a worker’s common-law claim for injury at work, providing an exclusive and limited remedy for such an injury. The result is lower and more predictable injury compensation costs for employers. But injured workers also benefit under the act:
The family of the [injured worker] ... knew privation and sorrow when injury stopped income. True, the injured workman would not get full “damages” as that term is used in the law. The amount of his recovery was carefully circumscribed. It was limited to interference with earning capacity. The workman might be so grotesquely disfigured *300 as to shock even the insensitive, yet for this harm there was no compensation, unless aided by statute.... [T]he workman has given up his common-law action, and can no longer seek damages from a jury. However, there was a giving on both sides. In return for the workman’s limited monetary recovery he got the certainty of adequate compensatory payments without recourse to litigation. [Crilly v Ballou, 353 Mich 303, 308-309; 91 NW2d 493 (1958).]
The people’s elected representatives crafted the WDCA with precision. It states that “[p]rocess and procedure under this act shall be as summary as reasonably may be.” MCL 418.853. Thus, “it is repugnant to attempt to judicially read into the act other requirements or conditions that operate to defeat or limit its aim.” Kidd v Gen Motors Corp, 414 Mich 578, 588; 327 NW2d 265 (1982). This Court has long recognized the clear limit on judicial creativity. “ ‘The workmen’s compensation law is a departure, by statute, from the common law, and its procedure provisions speak all intended upon the subject. Rights, remedies, and procedure thereunder are such and such only as the statute provides.’ ” Paschke v Retool Industries, 445 Mich 502, 511; 519 NW2d 441 (1994), quoting Luyk v Hertel, 242 Mich 445, 447; 219 NW 721 (1928) (emphasis in Paschke). Under the WDCA, a claimant who proves that he suffered a “disability” is entitled to benefits. MCL 418.301. Importantly, though the WDCA defines the term, the act does not provide any particular procedure for proving the existence of a disability. Instead, the Legislature leaves it up to the claimant regarding how to proceed in proving his case.
Today, the majority finds the act wanting. The majority reads a new requirement into the act: an injured worker must now provide the equivalent of a “transferable-skills analysis” to show a limitation of wage-earning capacity when establishing a disability *301 under MCL 418.301(4). This equivalent of a transferable-skills analysis is a key component of the new procedure the majority creates to prove a disability. According to the majority, a claimant must disclose his qualifications and training, present the equivalent of a transferable-skills analysis identifying the “universe of jobs” for which he might be qualified, and show that his work-related injury prevents him from performing jobs or that he is otherwise unable to obtain jobs for which he might be qualified; the employer may then rebut the claimant’s proofs and, finally, the claimant “may then come forward with additional evidence to challenge the employer’s evidence.” Ante at 281-284. In addition to these novel requirements, the majority creates a new right: the employer has a right to discovery. Specifically, the employer’s vocational expert “must be permitted to interview” the claimant. Ante at 284.
There is no support or authority in the WDCA for the new requirements, procedures, and rights the majority reads into the act. As a whole, this procedural gauntlet is inimical to the longstanding respect this Court has afforded the careful balance crafted by the people’s representatives in the WDCA: “[T]he WDCA is in derogation of the common law, and its terms should be literally construed without judicial enhancement.” Paschke, 445 Mich at 510-511. Further, the specific requirements that a claimant must provide the equivalent of a transferable-skills analysis and submit to an interview by the employer’s expert are not supported by the language of the act. Accordingly, the majority invades the province of the Legislature by adopting these new requirements.
*302 The majority effectively requires a claimant to present a transferable-skills analysis. Defendant’s vocational expert in the present case described the analysis:
... I would probably need to complete what is called the transferable skills analysis, where I would take the profile that was essentially presented of [plaintiffs] work history, his educational background, his restrictions as outlined by both physicians and enter all that information into the computer and essentially have that profile, all the variables of that profile bounced off of the U.S. Department of Labor’s Dictionary of Occupational Titles. All of their job classifications to assess what jobs might be most appropriate falling within the restrictions and other qualifications and training as noted.
As an alternative to this complex analysis, the majority allows that the claimant may “provide some reasonable means to assess employment opportunities to which his qualifications and training might translate.”[1] Ante at 282. But, in either case, the WDCA simply does not require this level of evidentiary proof to show a limitation in wage-earning capacity.
Comparison to the WDCA’s requirement for proof of injury is instructive. MCL 418.385 requires extensive and specific proofs of injury. It states that “[a]fter the employee has given notice of injury ..., if so requested by the employer or the carrier, he or she shall submit himself or herself to an examination by a physician or *303 surgeon authorized to practice medicine under the laws of this state .. . This demonstrates that the Legislature knows how to create a requirement of detailed proof when it wants to. The Legislature required detailed proof to show a work-related injury. It did not require the same level of evidentiary detail to show a limitation in wage-earning capacity. The “express mention in a statute of one thing implies the exclusion of other similar things.” Stowers v Wolodzko, 386 Mich 119, 133; 191 NW2d 355 (1971); see also Pittsfield Charter Twp v Washtenaw Co, 468 Mich 702, 712; 664 NW2d 193 (2003).
The WDCA does not authorize or require a claimant to present a transferable-skills analysis or its equivalent to show disability. But the act does require the employer to provide a transferable-skills analysis, or its equivalent, for an employee after he has been found disabled. MCL 418.319(1) reads, in part:
When as a result of the injury [an employee] is unable to perform work for which he or she has previous training or experience, the employee shall be entitled to such vocational rehabilitation services, including retraining and job placement, as may he reasonably necessary to restore him or her to useful employment. If such services are not voluntarily offered and accepted, the director on his or her own motion or upon application of the employee, carrier, or employer, after affording the parties an opportunity to be heard, may refer the employee to a bureau-approved facility for evaluation of the need for, and kind of service, treatment, or training necessary and appropriate to render the employee fit for a remunerative occupation. Upon receipt of such report, the director may order that the training, services, or treatment recommended in the report be provided at the expense of the employer. [Emphasis added.]
The requirements of MCL 418.319(1) sound very much like a transferable-skills analysis or its reason *304 able equivalent. In fact, a transferable-skills analysis is part of the vocational rehabilitation services offered by the Workers’ Compensation Agency.[2]
[3]Given that the act requires employers to provide and pay for a transferable-skills analysis after disability is established, it is simply astonishing that the majority would require the injured employee to provide and pay for this same detailed analysis, or its equivalent, in order to prove a disability.
Likewise, the act contemplates a similar analysis conducted by competent individuals trained in the field when an injured worker is also eligible for unemployment benefits. MCL 418.301 states:
(6) A carrier shall notify the Michigan employment security commission of the name of any injured employee who is unemployed and to which the carrier is paying benefits under this act.
(7) The Michigan employment security commission shall give priority to finding employment for those persons whose names are supplied to the commission under subsection (6). [Emphasis added.][3]
The Legislature has chosen to place the strenuous *305 requirements of a transferable-skills analysis, or its reasonable equivalent, on the employer and the state, not on an injured worker seeking compensation.
Importantly, there is no indication that a transferable-skills analysis is a reliable indicator of a claimant’s ability to find work. The Workers’ Compensation Appellate Commission (WCAC), part of the Workers’ Compensation Agency, an agency with specific expertise in employment matters, stated in this case that a transferable-skills analysis is speculative:
[W]e reject the concept that the measurement of work suitable to an employee’s qualifications and training includes a “transferable skills” analysis. Such an analysis suggests that work which the employee has never performed and, therefore, is totally unaware of its physical or mental requirements, can be utilized to measure disability.
. . . Such proofs could go on forever if the employee has held even a few different kinds of jobs. And, no matter how exhaustive (and exhausting) the proofs, such a standard still leaves open the employer’s arguments in briefing on appeal that the employee can answer only with argument and not with evidence. Both employee and employer must be excused from impossible burdens. [Stokes v Daimler-Chrysler Corp, 2006 Mich ACO 24, p 73.]
The majority puts an impossible burden on injured workers, in opposition to the letter and purpose of the WDCA. “[I]t is repugnant to attempt to judicially read into the act other requirements or conditions that operate to defeat or limit its aim.” Kidd, 414 Mich at 588.
In finding that Mr. Stokes had sufficiently met the requirements of MCL 418.301(4), the Court of Appeals stated:
The magistrate never limited the inquiry to whether plaintiff could no longer do his job. The magistrate exam *306 ined plaintiffs qualifications and training and came to the factual conclusion that his qualifications and training limited him to jobs driving a hi-lo and working in a warehouse, and “physically strenuous work from which he is clearly disabled.” This conclusion was based on plaintiffs testimony concerning his prior jobs, his education and training, and defendant’s failure to produce evidence showing that, contrary to plaintiffs proofs, there were, in fact, jobs within plaintiffs qualification or training that he could perform that would provide him with his maximum wage. This conclusion was amply supported by the record. [Stokes v DaimlerChrysler Corp, 272 Mich App 571, 592; 727 NW2d 637 (2006).]
I agree with the Court of Appeals that Mr. Stokes satisfied the requirements of MCL 418.301(4). The majority states that “[cjlaimant merely testified regarding his employment and educational background” and that he “presented no evidence that he had even considered the possibility that he was capable of performing any job other than driving a forklift.” Ante at 286. This is a mischaracterization of the proceedings before the magistrate. The magistrate conducted a substantial inquiry into Mr. Stokes’s qualifications and training, which included his hobbies and non-work-related activities going back more than 30 years.[4] The magistrate then concluded: “In fact, I find that [Mr. Stokes’s] training and qualifications limit him to physically strenuous work from which he is clearly disabled due to his significant spinal cord compression.” The magistrate found, as a matter of fact, both (1) that Mr. Stokes’s qualifications and training qualified him to do only physically strenuous work and (2) that his disabil *307 ity prevented him from doing physically strenuous work. There was simply no job for which Mr. Stokes was qualified that he was physically able to perform. I am mystified about what the majority finds lacking in Mr. Stokes’s proofs.[5] Under these circumstances, I believe it was reasonable for the magistrate to find that Mr. Stokes had suffered a reduction in his wage-earning capacity.
The majority also creates a new rule of discovery in disability hearings. The majority states that, in order for an employer to effectively meet its burden of production, “the employer has a right to discovery”[6] under Boggetta v Burroughs Corp, 368 Mich 600; 118 NW2d 980 (1962). Specifically, the employer’s expert “must be permitted to interview the claimant.”[7] Ante at 283-284. *308 This is directly contrary to the plain language and the plain purpose of the WDCA. The majority strips the magistrate of the discretion for discovery authorized by the Legislature.
The magistrate’s discretion is clearly provided in the two general discovery provisions of the act. MCL 418.851 states that the “worker’s compensation magistrate at the hearing of the claim shall make such inquiries and investigations as he or she considers necessary.” (Emphasis added.) This statutory provision contemplates discovery for the purposes of, and at the discretion of, the magistrate only. Likewise, MCL 418.853 states that “the director, worker’s compensation magistrates, arbitrators, and the board shall have the power to administer oaths, subpoena witnesses, and to examine such parts of the books and records of the parties to a proceeding as relate to questions in dispute.” Again, the statute expressly grants the magistrate broad discretion regarding discovery. The majority’s new discovery rule impermissibly strips discretion from the magistrate. If the Legislature had intended to limit the magistrate’s discretion regarding discovery of vocational information, it would have done so. It did not.
There is one statutory exception to the magistrate’s broad discretion regarding discovery. MCL 418.385 applies between parties and compels discovery. It states:
*309 After the employee has given notice of injury and from time to time thereafter during the continuance of his or her disability, if so requested by the employer or the carrier, he or she shall submit himself or herself to an examination by a physician or surgeon authorized to practice medicine under the laws of the state, furnished and paid for by the employer or the carrier. If an examination relative to the injury is made, the employee or his or her attorney shall be furnished, within 15 days of a request, a complete and correct copy of the report of every such physical examination relative to the injury performed by the physician making the examination on behalf of the employer or the carrier. The employee shall have the right to have a physician provided and paid for by himself or herself present at the examination. If he or she refuses to submit himself or herself for the examination, or in any way obstructs the same, his or her right to compensation shall be suspended and his or her compensation during the period of suspension may be forfeited. Any physician who makes or is present at any such examination may be required to testify under oath as to the results thereof. If the employee has had other physical examinations relative to the injury but not at the request of the employer or the carrier, he or she shall furnish to the employer or the carrier a complete and correct copy of the report of each such physical examination, if so requested, within 15 days of the request. If a party fails to provide a medical report regarding an examination or medical treatment, that party shall be precluded from taking the medical testimony of that physician only. The opposing party may, however, elect to take the deposition of that physician.
MCL 418.385 overrides the discretion of the magistrate and compels employees to submit to employers’ discovery requests for medical information.[8] It is exten *310 sive and specific. The Legislature knows how to require discovery when it wants to. It did so regarding medical information. It did not regarding a transferable-skills analysis or any other form of discovery related to a claimant’s qualifications and training. “This court cannot write into the statutes provisions that the legislature has not seen fit to enact.” Passelli v Utley, 286 Mich 638, 643; 282 NW 849 (1938).
The majority cites Boggetta, asserting that the case stands for the proposition that “the employer has a right to discovery” under the WDCA “if discovery is necessary for the employer to sustain its burden and present a meaningful defense.”[9] Ante at 283-284. It does not. First, Boggetta was decided solely on jurisdictional grounds, so its comments on the permissible scope of discovery in workers’ compensation hearings are dicta. Second, Boggetta did not require the magistrate to compel discovery; it merely stated that a magistrate could require discovery between parties at the magistrate’s discretion. Boggetta does not create a right of discovery in any party, and it does not strip the magistrate of discretion. Finally, Boggetta does not apply here because the Legislature has significantly modified the statute it relied on.
The Court in Boggetta stated that its advisory comments were grounded “by the statute quoted in the appeal board’s ruling.” Boggetta, 368 Mich at 603-604. Boggetta interpreted former MCL 413.8, which stated that “the member or deputy member of the commission assigned to any hearing in accordance with the provisions of [former MCL 413.7] shall make such inquiries and investigations as it shall deem necessary.” MCL *311 413.8 was repealed and replaced by MCL 418.851,[10] which was subsequently amended to read that “the worker’s compensation magistrate at the hearing of the claim shall make such inquiries and investigations as he or she considers necessary.”[11] (Emphasis added.)
This is a substantial alteration of the former statute. The added language, “at the hearing,” limits the scope of permissible discovery.[12] In fact, the amended lan *312 guage appears to call into question even the limited advisory holding of Boggetta. Before the hearing is simply not “at the hearing.” If it were, the added language would not have been necessary. The Legislature has subsequently modified the statute at issue in Boggetta to limit discovery. The majority’s new rule broadly expands discovery. Indeed, it compels discovery between parties, which the act does not expressly allow. Further, it strips the statutorily mandated discretion of the magistrate. Under the WDCA, the propriety and form of discovery are within the magistrate’s discretion.[13] What the statute gave, the majority takes away.
*313 The WDCA states that the “worker’s compensation magistrate at the hearing of the claim shall make such *314 inquiries and investigations as he or she considers necessary.” MCL 418.851. The WDCA also states that “worker’s compensation magistrates. . . have the power... to examine such parts of the books and records of the parties to a proceeding as relate to questions in dispute.”[14] MCL 418.853. The majority *315 states that the workers’ compensation magistrate must require the claimant to submit to an interview with the employer’s expert. Ante at 284. The majority’s new discovery rule is simply contrary to the language of the WDCA.
This discovery rule is a new requirement. The majority insists that its opinion creates no new requirements.[15] Ante at 289-290. The majority attempts to disguise the new requirement as necessary to prevent abuse of discretion. Ante at 294. This is disingenuous. There can be no abuse if there is no discretion, and there can be no discretion if there is no choice. Under the majority’s new rule, there is no choice; the employer’s expert “must be permitted to interview the claimant.” Ante at 284. Now, every time an employer requests to have its expert interview a claimant, the magistrate must comply.
The majority assures us that its new discovery rule will apply only when “such discovery is necessary for the employer in a particular case .. ..” Ante at 294 n 6. But in this case, the defendant sought information that was completely unnecessary. To review, Mr. Stokes had worked for defendant his entire adult life; at a previous hearing, he disclosed all his out-of-work hobbies, activities, and experience (including the content of the high school classes and college courses he had attended decades earlier); it is uncontested that his severe spinal compression disables him from all physically strenuous labor. When asked what information was lacking, the *316 defendant’s expert stated that he would need Mr. Stokes’s “work history, his educational background, [and] his restrictions as outlined by both physicians ....” All this information was in the hands of defendant well in advance of the hearing. Defendant has identified no evidence that it hoped to discover.[16] If compelled discovery is “necessary” in this case, it will be “necessary” in all cases. This Court has stated that “ ‘[r]ights, remedies, and procedure [under the WDCA] are such and such only as the statute provides.’ ” Paschke, 445 Mich at 511, quoting Luyk, 242 Mich at 447 (emphasis in Paschke).
The majority asserts that discovery is not a “novel concept in workers’ compensation proceedings.” Ante at 292.1 agree. The WDCA expressly gives the magistrate the power to compel testimony and the production of documents. MCL 418.853. The act authorizes the magistrate to make inquiries and investigations. MCL 418.851. Magistrate-directed discovery is not novel at workers’ compensation hearings. But it is novel to endow employers with a “right to discovery” when that right is found nowhere in the statute. It is novel to require a magistrate to compel discovery in certain situations when the act gives the magistrate broad discretion in discovery: “The worker’s compensation magistrate at the hearing of the claim shall make such *317 inquiries and investigations as he or she considers necessary.” Id. (emphasis added).
The majority states that the “magistrate cannot make a proper determination of whether a claimant has proved a disability without becoming fully informed of all the relevant facts.” Ante at 294. Again, I agree. But in this case, as noted, the magistrate conducted a thorough review of all the relevant facts.
The standards for workers’ compensation hearings are found in the WDCA. Today the majority finds the language of the act wanting and creates new procedures, requirements, and rules. The majority exercises its creativity, in opposition to the purposes of the act, at the risk of injured workers. This Court has stated that “the act should be liberally construed to grant rather than to deny benefits.” Paschke, 445 Mich at 511. Likewise, this Court has held that the careful legislative balance in the act was created “to provide financial and medical benefits to victims of work-connected injuries in an efficient, dignified and certain form.” Whetro v Awkerman, 383 Mich 235, 242; 174 NW2d 783 (1970).
The majority confesses recognition that its requirements, especially the requirement of a transferable-skills analysis or its equivalent, place injured workers at “significant risk.” Ante at 283. This risk is evident “because the employer always has the opportunity to rebut the claimant’s proofs,” and thus “the claimant would undertake significant risk by failing to reasonably consider the proper array of alternative available jobs because the burden of proving disability always remains with the claimant.” Ante at 283 (emphasis added).
The requirement creates significant risk because the claimant may not understand what is required in a transferable-skills analysis. A claimant may not have *318 the knowledge or skills required to accurately conduct a transferable-skills analysis. Further, as the Court of Appeals observed in this case, there is a considerable risk that a transferable-skills analysis “would inaccurately depict a claimant’s actual ability to obtain gainful employment and result in a virtually impossible burden of proof for the plaintiff!.]”[17] Stokes, 272 Mich App at 583-584. The significant risk the majority creates by requiring a transferable-skills analysis or its equivalent is inimical to certain and summary proceedings and, therefore, intolerable under the WDCA. Further, it improperly adds to the burden and expense of injured workers seeking compensation for work-related injuries.
The majority informs us that, although required to provide a detailed vocational analysis, a claimant “is not required to hire an expert....” Ante at 282. However, as a practical matter, the claimant will face even greater risk if he does not hire an expert. The majority clearly assumes that employers will have vocational experts at workers’ compensation proceedings to best support *319 their positions. With the employer’s expert locked and loaded, the prudent claimant will have like reinforcement. The vocational proofs required virtually ensure that claimants will need experts. Additionally, because of the uncertainty and expense imposed by this regime, it will almost certainly be more difficult for injured workers to find competent representation. This burden of uncertainty, difficulty, and expense is contrary to the “certainty of adequate compensatory payments without recourse to litigation” contemplated in the act. Crilly, 353 Mich at 309.
Finally, I note that the majority asserts that today’s decision will enhance “the competitiveness of Michigan as a workplace with other states . .. .”[18] Ante at 288 n 4. But Michigan is a state, not a business. This state’s first responsibility is the health and welfare of its citizens. It is for the Legislature to make policy decisions. The Legislature has crafted a careful balance of critical concerns in the WDCA.[19] This Court has stated that “[i]t is not this Court’s role to decide whether the Legislature acted wisely or unwisely in enacting this statute. We will not substitute our own social and economic beliefs for those of the Legislature, which is elected by the people to pass laws.” McAvoy v H B Sherman Co, 401 Mich 419, 439; 258 NW2d 414 (1977). Today, the majority takes a different view. I respectfully dissent.
*320 KELLY, J., concurred with CAVANAGH, J.

 The Code of Federal Regulations also defines “transferable skills”:
What we mean by transferable skills. We consider you to have skills that can be used in other jobs, when the skilled or semiskilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs. [20 CFR 404.1568(d)(1) (emphasis added).]

 Michigan’s guidelines for vocational rehabilitation providers state: “Vocational rehabilitation is composed of numerous activities leading to the goal of returning the injured/ill individual to productive employment. Vocational rehabilitation encompasses such services as counseling, job analysis, placement, labor market surveys, transferable skills analysis, job seeking skills training and vocational testing.” State of Michigan Vocational Rehabilitation Providers’ Guidelines, p 1 (emphasis added), available at <http://www.michigan.gov/ documents/Voc_Rehab_guidelines_153795_7.pdf> (accessed May 13, 2008).

 I note that the WDCA does not require an injured worker to look for work in order to prove a disability or receive compensation. MCL 421.28(l)(a), part of the Employment Security Act, demonstrates that the Legislature knows how to create such a requirement when it wishes. Such a requirement does not exist in the WDCA.

 Thus, the magistrate did not confine himself to reviewing whether Mr. Stokes was disabled from a single job; rather, the magistrate extensively reviewed whether Mr. Stokes had suffered a limitation in his wage-earning capacity. See Sington v Chrysler Corp, 467 Mich 144, 158; 648 NW2d 624 (2002).

 Mr. Stokes’s spinal cord compression prevents him from obtaining any job paying the maximum wages for which he might otherwise be qualified. In light of these findings by the magistrate, any job search would obviously be an exercise in futility. As mentioned, the WDCA does not require an injured worker to look for work in order to obtain benefits. In this case, the majority requires Mr. Stokes to search for jobs that do not exist. I believe there are far more efficient uses of resources than to send claimants out on a wild goose chase for jobs that do not exist. The majority’s opinion does not make “eminent sense,” ante at 290; it is incomprehensible.

 There is no such right in the WDCA. The majority creates it today. There is also no constitutional right to discovery. In re Del Rio, 400 Mich 665, 687 n 7; 256 NW2d 727 (1977). Given that there is no statutory or constitutional right to discovery, the majority oversteps its bounds by recognizing such a right. As this Court has stated: “ ‘The workmen’s compensation law is a departure, by statute, from the common law, and its procedure provisions speak all intended upon the subject. Rights, remedies, and procedure thereunder are such and such only as the statute provides.’ ” Baughman v Grand Trunk WR Co, 277 Mich 70, 72; 268 NW 815 (1936), quoting Luyk, 242 Mich at 447 (emphasis added).

 The majority states that “[b]ecause claimant refused to meet with the employer’s vocational expert, and the magistrate was unwilling to compel an interview, the employer’s vocational expert could only provide speculative testimony regarding the effect of claimant’s injury on his wage- *308 earning capacity.” Ante at 287. These are not the facts of this case. Defendant has identified no evidence it might have gained from interviewing Mr. Stokes that was not otherwise available. In fact, the magistrate found that defendant’s own ineptitude left its expert without the necessary data. Defendant hired its vocational expert five days before the final hearing (inclusive of a weekend) and failed to provide the expert with Mr. Stokes’s employee file (which was in defendant’s possession) or with transcripts from prior hearings in which Mr. Stokes testified about his work and life qualifications and training. Stokes, 2006 Mich ACO 24 at 42-44.

 MCL 418.222(2) also requires both the employee and the employer to disclose relevant medical records at the time of an application for a hearing or a written response. It does not apply to subsequent proceedings and further indicates the majority’s error in creating discovery rules additional to those the Legislature saw fit to provide.

 I observe that if compelled discovery is necessary in this case, it is difficult to imagine the case in which it would not be.

 1969 PA 317.

 1994 PA 271.

 This is a substantial change for the matter at hand because Boggetta was grounded in the “ ‘broad general language’ ” of the former statute. Boggetta, 368 Mich at 603 (citation omitted). This “broad” language was subsequently qualified and limited by amendment. Thus, not only is the discovery rule in Boggetta dicta and not on point, but its statutory grounding has been substantially altered. The majority asserts that the amendment “was merely a replacement of the previous language,” apparently contending that the amendment was meaningless. Ante at 295 n 6. For this proposition, the majority cites the WCAC en banc decision in O’Brien v Federal Screw Works, 1998 Mich ACO 53. But in the present case, the WCAC stated:
[Sjince the issuance of Boggetta, this dicta [regarding discovery] has been given undue attention without recognizing that, in the passage of time, the Worker’s Compensation Act has been amended since 1962 when Boggetta was decided. ...
It may be saying too much to assert that the amendment that was codified in what is now MCL 418.851 intended to adopt the dissenting position in Boggetta, but it can be stated that the amendment knocked the foundation out from under the majority opinion in Boggetta. For this reason, and because the language in Bogetta is dicta, we agree that any party’s confidence in Boggetta as authority for allowing a magistrate to require a parly to participate in pre-trial discovery (e.g., plant tours, interrogatories, meeting with vocational consultants) may be easily dashed. [Stokes, 2006 Mich ACO 24 at 47-48.]
Specifically addressing the case that the majority refers to here, the WCAC stated that “[i]n O’Brien, the majority suggested that the 1985 amendments ... were written simply to alter the assignment of cases from the Director... to some other unstated entity.” Id. at 53. The *312 WCAC then observed that who assigned cases was irrelevant: “The language ‘at the hearing’. . . has a very plain meaning no matter what administrative body assigns the cases for hearing.” Id. at 54. The commission concluded: “We believe that ‘the hearing’ in MCL 418.851 means what it says and refers to the hearing of the claim at which time the parties present their proofs in whatever fashion is necessary and it is done on the record.” Id. at 53. In coming to this conclusion, the WCAC observed that O’Brien had admitted that “ ‘there is no explicit statutory authority which allows for the deposing of lay witnesses.’ ” Id. at 52, quoting O’Brien, 1998 Mich ACO 53 at 4. The WCAC found this critical because “[w]hat is lacking in the administrative discussion of the issue of discovery is any true recognition that the authority for discovery has to be identified explicitly in the Act and that an implicit authority is not legally sufficient.” Stokes, 2006 Mich ACO 24 at 50. See also Baldus v Michigan, 1997 Mich ACO 429, p 4 (“The legislature, by amending [MCL 418.851] to limit the magistrate’s inquiries and investigations to those conducted at the hearing, seems to have adopted the [Boggetta] dissent’s position.”).

 The majority states that “[i]t is clear that discovery is an integral part of workers’ compensation proceedings that has been consistently upheld by the WCAC.” Ante at 293. This is not the issue; the issue is whether the magistrate has discretion regarding discovery (as stated in the WDCA) or is forced to require discovery in certain situations (as mandated today by the majority).
To support its decision to override the statutory discretion afforded the magistrate and to force magistrates to compel vocational interviews, the majority cites a smattering of WCAC cases. I do not find the cases compelling on this point. With one exception, the cases do not stand for *313 the proposition that the magistrate is required to compel discovery in certain situations; the cases simply affirm the magistrate’s discretion to order such discovery as he deems necessary. For instance, in Nessel v Schenck Pegasus Corp, 2003 Mich ACO 272, p 7, the commission began with the obvious: “Certainly, the worker’s compensation arena has never had full discovery as provided for in the Michigan General Court Rules.” The commission went on to conclude:
While pre-trial access to information is critical, the extent of discovery and the precise form which disclosure may take, is commended to the broad discretion of worker’s compensation magistrates. However, it is error for a magistrate confronted with requests for information pursuant to Sington to categorically deny requests for information on the ground such information is not subject to pre-trial production. The need for particular information must be assessed on a case-by-case basis, [id!, at 8 (emphasis added).]
The majority disregards the broad discretion the WDCA affords the magistrate and replaces the “case-by-case” evaluation contemplated in Nessel with categorically compelled discovery for employers’ vocational experts. Nessel does not support the majority’s new discovery rule.
Likewise, in Rochon v Grede Foundries, Inc, 2000 Mich ACO 534, p 6, while the commission asserted “that magistrates have the power to compel discovery,” the commission did not assert that this Court has the power, under the WDCA, to categorically compel a magistrate to require discovery in certain situations. Indeed, the commission noted the unique circumstance and specific scope of its decision: “Given the unique problems that a death case presents, the magistrate acted reasonably and within his discretion in ordering the discovery.” Id.
Similarly, O’Brien did not categorically embrace vocational discovery; rather, the commission again addressed a specific circumstance, stating that Bogetta “stands for the proposition that limited discovery tools such as interrogatories may be utilized in cases involving unique problems, i.e., death cases.” O’Brien, 1998 Mich ACO 53 at 3. So the cases cited by the majority stress the magistrate’s discretion and address specific circumstances in which, on a case-by-case basis, discovery may be required; more importantly, they are diametrically opposed to the majority’s discretion-stripping mandate.
In White v Waste Mgt, 2004 Mich ACO 4, the commission did require a magistrate to compel the claimant to submit to an interview by the *314 employer’s vocational expert. Addressing that aberrant decision, the commission in the present case, sitting en banc, stated:
We disagree with the majority opinion in White ....
... Neither the Court’s decision in Sington, nor “the reality of legal requirements and evolved complex burdens of evidentiary proofs mandated by modern case law such as found in Sington,’’ have moved the Legislature to alter the authority of the magistrate. While it is accurate to state that the opinion in Sington changed perceptions of the Worker’s Compensation Act, we must recognize that the Act, itself, did not change after Sington was issued. Sington has merely provided a party with the motivation to assert that there is dormant authority in the Act that now must be awakened. [Stokes, 2006 Mich ACO 24 at 51, quoting the dissent in White, 2004 Mich ACO 4 at 14.]
The commission then concluded:
If the Legislature determines that it had made an unwise choice in failing to allow for discovery, it is the legislative prerogative to amend the Act and provide for it. Certainly, along the way, the Legislature could then provide some guidance as to what is a permissible and what is an impermissible use of vocational consultants. The Legislature could also determine whether Sington actually codified the definition of disability it intended and whether it is prudent to divert the limited dollars of employers and employees in the worker’s compensation arena away from efforts to put employees back to work and in the direction of vocational consultants. [Stokes, 2006 Mich ACO 24 at 61.]
Because there is no statutory authority for its decision, the majority stretches for support in WCAC decisions. But such support is not consistent or substantial.

 This is consistent with the nature of the proceedings envisioned by the WDCA. “ ‘Proceedings under the workmen’s compensation act are purely statutory, — administrative, not judicial, — inquisitorial, not *315 contentious, — disposed of not by litigation and ultimate judgment, but summarily.’ ” Hayward v Kalamazoo Stove Co, 290 Mich 610, 616-617; 288 NW 483 (1939), quoting Hebert v Ford Motor Co, 285 Mich 607, 610; 281 NW 374 (1938).

 The majority opinion also claims to “afford guidance in the application of Sington . ...” Ante at 290. If Sington requires rewriting the WDCA, then Sington should be reviewed.

 In its attempt to characterize the magistrate’s exercise of discretion in this case as abuse of that discretion, the majority states the general proposition that a “magistrate cannot make a proper determination without becoming fully informed of the facts regarding a claimant’s” reduced wage-earning capacity. Ante at 295.1 fully agree, and, when such a case is presented to this Court, I will vote accordingly. But that proposition has nothing to do with this case. The magistrate’s review was extensive, and he considered all relevant facts, including employment opportunities. The majority has not identified one relevant fact or inquiry that would hint that the magistrate in this case was less than fully informed.

 I agree with the majority that “any reasonable person” would assess her employment alternatives if she were injured outside the workplace such that she could not perform her current job. Ante at 291. But Mr. Stokes cannot perform any job for which he might be qualified. For Mr. Stokes, the answer to the question, “Is there another job in which I am employable at a similar wage?” is “No.” Requiring him to search for work that cannot be found is unreasonable. See ante at 291. Further, I believe that Michigan workers wish to work for a living. I suspect few Michigan employees view an injury resulting in job loss as a welcome opportunity to become acquainted with their couches. Consequently, I do not believe that denying injured workers’ claims for assistance is necessary to prevent statewide destruction. And even if I were convinced of the majority’s policy assertions, I would be constrained by the language of the WDCA from denying benefits to a deserving claimant. Mr. Stokes has severe spinal compression. He is not able to perform his former job or any other paying a similar wage. The majority’s decision to deny him benefits is unreasonable and unsupportable.

 I find it quite ironic that this Court’s “textualists,” first, have no problem adding language to the statute and, second, assert what good public policy their additions create.

 The majority emphasizes that fairness to employers compels its creative amendments of the WDCA. But that is precisely the point: the Legislature has carefully balanced the equities in the act. This Court should not attempt to adjust the scales that Michigan lawmakers have set.